STATE OF FLORIDA, ex rel., LOUISE GARRISON, *Plaintiff in Error*, vs. GUY C. REEVE, Chief of Police of the City of Miami, Florida, *Defendant in Error*.

139 So. 817.

Division A.

Opinion filed February 8, 1932.

*Peters & Kemp,* for Plaintiff in Error;

*J. W. Watson, Jr.,* for Defendant in Error.

BUFORD, C. J.—The plaintiff in error was petitioner in the court below for a writ of habeas corpus. The writ was issued and upon return coming in the petitioner moved to quash the return upon the ground that no authority was shown by the said return for the restraining of the liberty of the petitioner. The motion to quash was denied and the petitioner was remanded to the custody of the Chief of Police. To the judgment, writ of error was taken and the case is here for review.

The petitioner was charged with violation of paragraph 3 of Section 2 of Ordinance 917 of the City of Miami, which declares it to be unlawful to operate or conduct a beauty shop in such city unless it is at all times under the direct supervision and management of a registered beauty culturist. The City Charter of the City of Miami authorizes the City of Miami amongst other things as follows:

''Paragraph (y) of Section 3:

To exercise full police powers and establish and maintain a department of division of police.

Paragraph (z) of Section 3:

To do all things whatsoever necessary or expedient for promoting or maintaining the general welfare, comfort, education, morals, peace, government, health, trade, commerce or industries of the city or its inhabitants.

Paragraph (aa) of Section 3:

To make and enforce all ordinances, rules and regulations necessary or expedient for the purpose of carrying into effect the powers conferred by this charter or by any general law, and to provide and impose suitable penalties for the violation of such ordinances, rules and regulations, or any of them, by fine not exceeding five hundred dollars or imprisonment at hard labor on the streets or other works of the city for a term not exceeding sixty days, or both.

Paragraph (bb) of Section 3:

To license and tax privileges, business, occupations and professions carried on and engaged in within the city limits and the amount of such licenses and the amount of such taxes shall not be dependent upon a general State revenue law.

Paragraph (p) of Section 3:

* * * * * to regulate or prevent slaughter houses or other noisome or offensive business within said City, * * * * to regulate or prohibit the * * * * exercise of any dangerous or unwholesome business, trade or employment therein; * * * * and generally to define, prohibit, abate, suppress and prevent all things detrimental to the health, morals, comfort, safety, convenience and welfare of the inhabitants of the City.

Paragraph (w) of Section 3:

To provide for the preservation of the general health of the inhabitants of said city, make regulations to secure the same, * * * * to prevent the introduction or spread of contagious or infectious diseases, and prevent and suppress diseases generally; * * * * to provide for the organization of a department or bureau of health, to have the powers of a board of health, for said city, with the authority necessary for the prompt and efficient performance of its duties, with power to invest any or

all the officials or employees of such department of health with such powers as the police officers of the city have; * * * * .

Section 49 of the City Charter:

In providing for the licensing and regulating persons, corporations and associations engaged in business, occupations, professions and trades the commission may by ordinances classify business and arrange the various businesses, occupations, trades and professions carried on in the city into such classes as may be just and proper and fix by ordinance the license fee payable by each, without regard to the State law fixing such fees.

Section 84 of the City Charter:

All general laws of the State, applicable to municipal corporations, heretofore or hereafter enacted and which are not in conflict with the provisions of this charter or with ordinances or resolutions hereafter enacted by the commission pursuant to authority conferred by this charter, shall be applicable to the said city, provided, however, that nothing contained in this charter shall be construed as limiting the power of the commission to enact any ordinance or resolution not in conflict with the constitution of the State or with the express provisions of this Charter.

Section 108 of the City Charter:

The enumeration of particular powers in this charter shall not be deemed or held to be exclusive, but in addition to the powers enumerated herein, implied thereby, or appropriate to the exercise thereof, the said City shall have and may exercise all other powers which are now, or may hereafter be, possessed or enjoyed by cities under the Constitution and general laws of this State, and all the powers of the City, whether expressed or implied, shall be exercised and embraced in the manner prescribed in this charter, or when not so prescribed then in such manner as may be provided, by ordinance or resolution of the Commission.''

The ordinance under which this prosecution is had contains the following definitions:

"(f) *Beauty Culture.* Any one or any combination of the following practices (when done upon the upper

part of the human body for cosmetic or beautifying purposes and not for the treatment of diseases or physical or mental ailments and when done for payment, either directly or indirectly, or without payment for the public generally), constitutes the practice of beauty culture:

1. The application of the hands or of mechanical or electrical apparatus with or without cosmetic preparations, tonics, lotions, creams, antiseptics or clays, to massage, cleanse, stimulate, manipulate, exercise or otherwise to improve or to beautify the scalp, face, neck, shoulders, arms, bust or upper part of any person.

2. To arrange, dress, curl, wave, cleanse, cut, clip, singe, bleach, dye, tint, color or similarly treat the hair of any person.

3. The removal of superfluous hair from the body by electrical or other process.

4. Manicuring.

(g) *Beauty Culturist.* Any person who is engaged in the business, profession or occupation of beauty culture, as defined in subdivision (f) hereof.

(h) *Beauty Culture Specialist.* Any person who specializes in any one or more of the arts defined in subdivision (f) hereof.

(i) *Beauty Culture Apprentice.* A beauty culture apprentice shall mean any person who is engaged in learning and acquiring a knowledge of the practice of beauty culture, as defined in sub-division (f) hereof.

(j) *Beauty Shop.* A beauty shop is any building or part thereof wherein beauty culture is practiced.''

The ordinance further provides:

Section 2. REQUIREMENT OF REGISTRATION.

(a) That from and after the first day of July, A. D. 1930, it shall be unlawful for any person in the City of Miami, Florida, to engage in, follow or practice, or to attempt to engage in, follow or practice the business, profession or occupation or barbering or beauty culture, unless such person shall have first obtained a certificate of registration as a registered barber or a registered beauty culturist, or registered beauty culture specialist issued pursuant to the provisions of this ordinance by the Board of Examiners hereinafter established.''

And, sub-section E of Sec. 2 is as follows:

"(e) That from and after the first day of July, A. D. 1930, it shall be unlawful to operate or conduct a beauty shop in the City of Miami, Florida, unless it is at all times under the direct supervision and management of a registered beauty culturist.

Nothing in this ordinance shall be construed as preventing any person, firm, corporation or association from owning, operating and/or conducting any barber or beauty culture school or barber or beauty shop or establishment in the City of Miami, Florida, provided, the employees thereof actually engaged in the practice of the various occupations and professions classified and defined in this ordinance are duly registered in accordance with the provisions hereinafter provided."

It is contended by the plaintiff in error that because Section 3 (bb) of the Charter of the City of Miami authorizes the City to levy license taxes on all businesses conducted within the City and especially authorizes the City by ordinance to regulate or prevent slaughter houses; to prohibit or regulate the keeping of fowls or animals; to regulate the transportation of articles through the streets; to regulate the location of stables; to regulate the size, material and construction of buildings, fences, etc.; to regulate hospitals and to license and regulate air vessels operated over the City; to license, control, tax and regulate traffic and sales upon the streets; to regulate, suppress and prohibit hawkers, peddlers and beggars on the streets and to license, tax, regulate or prohibit in designated streets carriages, omnibuses, cars, wagons, drays, etc.; to cause to be registered and controlled the drivers of motor vehicles and to cause to be registered and controlled the pilots of air vessels operated over the City and does not especially authorize the City by ordinance to regulate the practice of the profession of beauty culture, that the right of the City to pass an ordinance regulating and controlling the practice of beauty culture is by necessary impli-

cation excluded, the contention being that we are controlled in this regard by the rule expressed by Mr. Dillon in his work on Corporations, Sec. 667, "If the charter or statute enumerates the occupations or businesses which may be regulated and licensed, the enumeration, if on the whole such appears to be the legislative intent is exclusive and a municipality has no power to license or regulate occupations or businesses not embraced in the enumeration." We have no fault to find with this rule, but we think that the rule is not applicable here because the legislature granted in the Charter to the City of Miami certain other general rights and powers, which grants are not compatible with the view that it was intended to limit the power of the City in this regard. These provisions have been hereinbefore quoted.

It is a matter of common knowledge that the barbers trade and that of the beauty culturist are close akin. The definitions contained in the ordinance heretofore quoted show clearly the trade, science or profession which is sought to be controlled by this ordinance and these activities have to do with the treatment of the person of the customer by direct application with the hands or mechanical instruments, in many cases electrical instruments, manipulated by the operator, and therefore, it appears that the City of Miami in promoting and maintaining the general welfare, comfort and health of its inhabitants is authorized to adopt and enforce an ordinance regulating the profession or trade of the beauty culturist such as the one here under consideration. The legislature, through the provisions of the Charter heretofore referred to conferred upon the City of Miami the right to exercise the police power incident to the enforcement of this ordinance.

It may be said that the authority of the legislature to delegate the enforcement of general police powers to a municipality is too well settled to require any discussion or citation of authorities. We do not mean to say, how-

ever, that the authority which may be delegated to a municipality authorizing the enforcement of general police powers is necessarily as broad and as all inclusive as the general police power which the legislature may enforce by direct statute, but the authority of the legislature to delegate the enforcement of general police powers to a municipality is sufficiently broad to authorize the legislature to delegate that particular police power which the municipality is here attempting to enforce.

We have found no case, nor has counsel for plaintiff in error cited us to any case, where any court in this country has held that the legislature was without authority to enact law regulating the trade, science or profession of barber or beauty culturist under the general police powers vested in the states. On the contrary, the courts have repeatedly held that these trades, or occupations, sciences or professions, whichever they may be called, are proper subjects of police regulation.

In People vs. Logan, 284 Ill. 83, 119 N. E. 913, it is said:

"It is argued that the provisions of the act are in violation of Sections 1 and 2 of Article 2 and Section 22 of Article 4 of the State Constitution and of the Fifth and Fourteenth Amendments to the Constitution of the United States, because they have no relation to the public health, safety, welfare or comfort. An individual has the right to pursue any trade, calling or occupation, without restriction which is not injurious to the public. The exercise of the police power for the regulation of any trade, occupation, or calling can be justified only on the ground of necessity for the health, safety, welfare or comfort of society. Bessette vs. People, 193 Ill. 334, 62 N. E. 215, 56 L. R. A. 558. The trade of a barber brings him in direct contact with the persons of his patrons, and careless and unsanitary practices in his trade may induce diseases of the skin. Sycosis, popularly known as barber's itch, is a common form of disease of the face and scalp propagated by the

use of infected razors and brushes. Other and more serious diseases may also be similarly spread. It cannot be said that the reasonable regulation of the trade of a barber has no relation to the health and safety of the public. Such regulation is, therefore, within the scope of the police power which the State inherently possesses to restrain and control the exercise of private rights in such manner as may be necessary and appropriate to promote the public health, safety and welfare.''

''The intention is to restrict the public from engaging in this occupation to the extent that only those may do so who have learned the trade; know how to prepare, use and care for the tools; know what sanitary precautions must be taken, to avoid the risk of spreading disease; and are acquainted with the sanitary regulations which the board of examiners is authorized by section 11 to adopt. Three years seems a long time to require for learning the trade of a barber, but we cannot say that it is so unreasonably long as to constitute an unreasonable restriction upon the right to engage in the trade.''

In State vs. Walker, the Supreme Court of Washington, 92 Pac. 775, said:

''Act March 18, 1901 (Laws 1901, p. 349, c. 172), providing for the examination, licensing and regulation of barbers is a valid exercise of the police power to adopt regulations for the health, comfort and well being of society and is not void as an abridgment of the liberty and natural rights of the citizen.''

''Professions or trades operating directly on the person and thereby directly affecting the health, comfort and safety of the public may be regulated by the legislature under the police power, while other professions or trades cannot be so regulated, without depriving a citizen of his natural rights guaranteed by the Constitution.''

To like effect was the holding in State vs. Briggs by the Supreme Court of Oregon, reported 77 Pac. 750. For other cases in point see Davis vs. Rose, 97 Fla. 710, 122 Sou. 225 and cases there cited.

However, it is contended that the provisions of this ordinance which eliminate from its application certain persons already practicing the occupation or profession of beauty culturist at the time the ordinance was passed conferred a special privilege, immunity or franchise upon those who were so engaged and thereby violated the equal protection of the law provision of our Constitution. This question was presented in the case of People vs. Logan, supra, and a like provision was held valid. It was also contended in that case, as it is here, that the requirement of a certain period of service as an apprentice or, in lieu thereof, a certificate of efficiency from a recognized school had no direct relation to public health or safety but is an arbitrary restriction intended to discourage from engaging in this occupation. It was there held:

"The intention is to restrict the public from engaging in this occupation to the extent that only those may do so who have learned the trade; know how to prepare, use and care for the tools; know what sanitary precautions must be taken to avoid the risk of spreading disease; and are acquainted with the sanitary regulations which the board of examiners is authorized by section 11 to adopt. Three years seems a long time to require for learning the trade of a barber, but we cannot say that it is so unreasonably long as to constitute an unreasonable restriction upon the right to engage in the trade."

It is contended here also that the ordinance is invalid because it authorizes a board created by the ordinance to determine the standards and degree of knowledge or qualification required of proposed licensees. A like question was presented in the case of State vs. Briggs, *supra*. In that case the court said concerning an ordinance regulating the practice of the business of a barber:

"Laws 1903, pp 27, 32 # #1, 12, declare that it shall be unlawful for any person not registered to practice the business of a barber or conduct a barber school without the sanction of a board of examiners created by section 2, which also defines the duties and powers of such

board among which is to make such by-laws as it may deem necessary, not inconsistent with the Constitution of the State or with the provisions of the act, and prescribe the qualifications of a barber. Section 9 (Laws 1903, p. 31) defines what shall constitute the occupation of a barber and section 10 provides a penalty for violation of the act. *Held,* that such act was not unconstitutional for failure to prescribe the standard or degree of knowledge or qualification required for barbers' licenses and in delegating power to prescribe such qualifications to the board.

"2. Laws, 1903, p. 31, #9, authorizing the board of barbers examiners to prescribe the qualifications of a barber, within the state, does not confer on the board arbitrary power to refuse to issue licenses, the board being required to exercise the power conferred by prescribing fair and reasonable qualifications appropriate to the calling intended to be regulated, operating generally and impartially upon all in like situation."

As heretofore stated, we can find no reason to differentiate in the application of law or ordinance between the trades, occupations, sciences or professions of the barber and the beauty culturist as defined in the ordinance here under consideration. We, therefore, have treated the case in the same manner in which it would have been treated had that part of the ordinance regulating the conducting of the business of a barber been the subject of the charge instead of that part of the ordinance regulating the business of beauty culture, and wherever the word "barber" appears in this opinion or the quotations used herein, such word may be lifted out and the words "beauty culturist" be inserted in lieu thereof. We might then adopt as paraphrased the second head-note in the case of People vs. Logan, *supra,* making it read as follows: "regulating the pursuit of the business, art and avocation of beauty culture and to insure the better qualifications of persons following such business; making it unlawful to follow it without obtaining a certificate of registration from a Board of

Examiners and requiring certain study and practice and the possession of requisite skill in the preparation of tools, implements and devices used in the application with the hands or mechanical or electrical apparatus with or without cosmetic preparations, tonics, lotions, creams, antiseptics or .clays or to massage, cleanse, stimulate, manipulate, exercise or otherwise to improve or to beautify the scalp, face, neck, shoulders, arms, bust or upper part of any person; to arrange, dress, curl, wave, cleanse, cut, clip, singe, bleach, dye, tint, color or similarly treat the hair of any person, or to remove any surplus hair from the body by electrical or other process and the knowledge of how to avoid the spreading of the common diseases of the face and skin and how to avoid otherwise injuring the person being operated upon; and requiring an annual registration fee, is within the scope of the police power of the state to control the exercise of private rights in a manner necessary and appropriate to the public health, safety and welfare'' and such regulations may be prescribed by legislative act or it may be prescribed by municipal ordinance under legislative authority granting the municipality the right to exercise general police powers.

The judgment should be affirmed and it is so ordered. Affirmed.

ELLIS AND BROWN, J.J., concur.

WHITFIELD, P.J., AND DAVIS, J., concur in the opinion and judgment.

TERRELL, J., not participating.