## City of New Castle v. Sullivan

*Gilbert E. Long, John S. Powers* and *Frank Moretti,* for plaintiff.

*Edwin K. Logan,* for defendant.

BRAHAM, P. J., July 3, 1939.—This case is before us upon an appeal from summary conviction of defendant for violating an ordinance of the City of New Castle establishing opening and closing hours for barber shops under the provisions of the Act of June 19, 1931, P. L. 589, sec. 15, as amended by the Act of June 5, 1937, P. L. 1689, sec. 7, 63 PS §566. The section of the statute is as follows:

"Nothing contained in this act, or the act to which this is an amendment, shall be construed as prohibiting any municipality from adopting appropriate ordinances, not inconsistent with the provisions of this act or the rules and regulations adopted thereunder, as may be deemed necessary to promote the public health and safety and regulate the conduct of barber shops and schools, and any municipality shall have power, by proper ordinances, to fix the days and hours during which barber shops in the said cities may be open for business: Provided, however, That in any such ordinance, provisions shall be made that a designated local health or police official may, upon

application of the proprietor of any barber shop, and upon proof that barber service to the public so requires, issue a permit effective for a limited time for the operation of a particular barber shop, at such times outside of and beyond those fixed in the said ordinances, as is required by temporary public necessity, with the power to renew the said permit upon further proof of public necessity".

Pursuant to this statute on June 30, 1938, an ordinance was adopted by the City of New Castle, providing in part as follows:

"Sec. 1. All barber shops or places where barbering, as defined by the statutes of the State of Pennsylvania, is practiced within the City of New Castle, shall not open before the hours of eight o'clock a.m. and shall be closed at the hours of six p.m. of each day, excepting Saturday and on days preceding the holidays hereinafter mentioned. On Saturdays all such places shall be closed at the hour of eight o'clock p.m. and on the days preceding the first day of January, the thirtieth day of May, Memorial Day, the Fourth of July, Labor Day, as proclaimed, and Thanksgiving Day as proclaimed, and the twenty-fifth day of December, all such places shall be closed at the hour of eight o'clock p.m."

Admittedly defendant, Frank Sullivan, did keep his barber shop open and engaged in the business of barbering after the hours provided by the ordinance. Admittedly also, the ordinance is valid if the statute authorizing the fixing of opening and closing hours is constitutional. Furthermore, no objection is raised to the action of the legislature in delegating the power to fix hours to the city council.

The act in question regulates in considerable detail the occupation of barber. It requires a license for anyone when engaged in the occupation. It provides for apprenticing, for barber schools, prohibits licensed persons from engaging in the occupation when afflicted with an infectious or a contagious disease, and provides for inspection of the premises where the trade is carried on. No

contention is here raised that the occupation of barber is such a one as cannot be regulated by the State under its police power. The general state of the law is set out in annotations in 98 A. L. R. 1088, and 20 A. L. R. 1111. No further mention of that part of the case is necessary.

Our problem, therefore, becomes a simple one. Is the ordinance of the City of New Castle under the authority of the Act of 1937, establishing opening and closing hours for defendant's barber shop and providing a penalty for its violation, a legitimate exercise of the police power of this Commonwealth?

The nature of the police power has recently been restated in our Supreme Court, speaking through Chief Justice Kephart in Commonwealth v. Stofchek, 322 Pa. 513, 519:

"But, the State possesses inherently a broad police power which transcends all other powers of government. There is therefore no unqualified right to acquire, possess, and enjoy property if the exercise of the right is inimical to the fundamental precepts underlying the police power. This court said in *Commonwealth v. Widovich*, 295 Pa. 311: 'The police power is the greatest and most powerful attribute of government; upon it the very existence of the State depends. . . . If the exercise of the police power should be in irreconcilable oppostion to a constitutional provision or right, the police power would prevail.' It needs no constitutional reservation or declaration to support it: *City of Scranton v. Public Service Commission*, 268 Pa. 172."

The Federal Constitution does not prohibit governmental regulations for the public welfare but merely requires that the ends shall be accomplished by means consistent with due process. By due process is meant only that the law shall not be unreasonable, arbitrary, or capricious and that the means selected shall have a real and substantial relation to the object sought to be attained: Nebbia v. New York, 291 U. S. 502, 78 L. Ed. 940. The State governments are governments of general

as distinguished from the Federal Government of limited powers "And, as respects state legislation, in order to declare an Act of the General Assembly unconstitutional, its want of authority to pass the act must clearly appear,—to doubt is to decide in favor of its constitutionality: *Com. v. Lukens*, 312 Pa. 220, 223 . . . ; *Keator v. Lackawanna Co.*, 292 Pa. 269 . . . ; *Kitty Roup's Case*, 81* Pa. 211": Rohrer v. Milk Control Board, 322 Pa. 257, 260.

The Nebbia case in the United States court, and the Rohrer case in our own court represent authoritative statements concerning the principles applicable to the milk industry—a great industry. What must now be determined is whether the State in the exercise of its police powers has the right to regulate the occupation of barber, a much less extensive field, or whether the ordinance in question bears no reasonable relationship to the regulatory power thus possessed.

If this problem be approached from the standpoint of general precedent a conclusion against the constitutionality of this ordinance is indicated. Similar ordinances have been declared unconstitutional by the courts of last resort of 10 jurisdictions. The cases are McDermott v. City of Seattle et al., 4 F. Supp. 855 (1933), Chaires et al. v. City of Atlanta, 164 Ga. 755, 139 S. E. 559, 55 A. L. R. 230 (1927), City of Alexandria v. Hall, 171 La. 595, 131 So. 722 (1930), Knight, etc., v. Johns, 161 Miss. 519, 137 So. 509 (1931), Patton v. The City of Bellingham et al., 179 Wash. 566, 38 P.(2d) 364, 98 A. L. R. 1076 (1934), State ex rel. v. City of Laramie et al., 40 Wyo. 74, 275 Pac. 106 (1929), Ganley v. Claeys et al., 2 Cal. (2d) 266, 40 P.(2d) 817 (1935), City and County of Denver v. Schmid, 98 Colo. 32, 52 P.(2d) 388 (1935), State ex rel. v. Johannes, 194 Minn. 10, 259 N. W. 537 (1935), and Amitrano v. Barbaro (R. I. 1938), 1 A.(2) 109. In general these cases hold the imposition of opening and closing hours upon barbers to be an unconstitutional invasion of the right to earn a liv-

ing, consequently a denial of due process, having no reasonable relation to the admittedly proper exercise of the police power in regulating the business of barbering.

On the other hand in the cases of Falco v. The City of Atlantic City et al., 99 N. J. L. 19, 122 Atl. 610 (1923), and Wilson v. City of Zanesville, 130 Ohio St. 286, 199 N. E. 187 (1935), it was held that the regulation of opening and closing hours for barber shops was within the police powers of those respective States. The Ohio case is stronger than our own in that its constitution provided that laws might be passed fixing and regulating the hours of labor, and providing for the comfort, health, safety, and general welfare of all employes, and is weaker than our own in that the legislature had not authorized the passing of such ordinance as was adopted by the City of Zanesville.

No decision of the appellate courts of this State has been called to our attention and but three decisions of courts of common pleas. They are City of Nanticoke v. Stolarski, 26 D. & C. 271 (1935), decided by President Judge McLean of Luzerne County, Commonwealth v. Teman, 17 Leh. L. J. 405, decided by Judge Henninger of Lehigh County, and Guerrari v. Boro of Aliquippa, in the Court of Quarter Sessions of Beaver County, no. 86 December term, 1937, an opinion by President Judge Reader of Beaver County, not reported. In the first two of these cases an ordinance similar to the one in issue was declared unconstitutional; in the last case the ordinance was held constitutional.

Some observations may be made on these cases. The New Jersey Court in Falco v. The City of Atlantic City et al., supra, relies upon the famous laundry cases in the Supreme Court of the United States, namely Barbier v. Connolly, 113 U. S. 27, 28 L. Ed. 923, and Hing v. Crowley, 113 U. S. 703, 28 L. Ed. 1145, holding valid the ordinances of San Francisco establishing closing hours for laundries on the ground that it was necessary to prevent a fire hazard. The controlling argument in the Falco case

is that, having the right to regulate the barber business, the legislature had a right to provide opening and closing hours so that inspection would be required only within reasonable hours. If barber shops were allowed to remain open at all hours adequate inspection might be rendered difficult or impossible, and consequently detrimental to the public health. In Patton v. The City of Bellingham et. al., supra, the very spirited dissenting opinion alludes to "wild cat" barber shops operated by persons engaged in other occupations and acting as barbers only incidentally. There is evidence in the present case that such a condition exists. In the California case, Ganley v. Claeys et al., supra, the Supreme Court of that State had previously thrown out a law making it a misdemeanor to keep barber shops open on Sunday; thus the invalidity of general closing hours was a foregone conclusion. In State ex rel. v. City of Laramie et al., supra, the Wyoming case, the court undertakes to distinguish the Falco case on the ground that there the statute gave specific authority to regulate hours, while in Wyoming its exercise came only from the powers to license, regulate and control. The court further points out the danger of the principle of attaching the right to regulate hours to the right merely to license, observing that many occupations are licensed and inspected but hours limited in few. In Knight, etc., v. Johns, supra, the Mississippi Supreme Court rejected entirely the principle basing regulation of hours on inspection. In City of Alexandria v. Hall, the Louisiana case, supra, the Falco case is distinguished as resting upon a specific statute. The District of Columbia case of McDermott v. City of Seattle et al., supra, came up on a motion to dismiss a bill in equity thus admitting the averment that plaintiff had a goodwill dependent upon 25 years of keeping his shop open. Upon a survey of the general state of authority there appears therefore some ground for distinguishing at least the California case in which the Supreme Court went beyond the general trend of authority and the Wyoming case, the Louisiana case, where there were no stat-

utes, and the District of Columbia case which went off on a technical point.

In the foreign cases above cited and the Pennsylvania cases decided by our learned brethren of the common pleas, not enough attention is paid to the recognized right of the legislatures to limit hours of employment and closing hours in other occupations: See annotation, 90 A. L. R. 814. In Pennsylvania there has been regulation of hours of labor in various industries. In Commonwealth v. Casey, 43 Pa. Superior Ct. 494, an act regulating the hours of workers in the employ of State or municipal corporations, or otherwise in public work, was held constitutional. In Commonwealth v. Beatty, 15 Pa. Superior Ct. 5, a statute making it a penal offense to employ minors or females in manufacturing or mercantile establishments, laundries, etc., more than 12 hours a day or 60 hours a week, was upheld. In Commonwealth v. Wormser, 260 Pa. 44, a statute providing that no minor was to be hired without an employment certificate and children under 16 were not to be employed at night was upheld as a valid exercise of the police power.

It may be contended that the ordinance now before us does not regulate hours of labor; but, fixing as it does the maximum hours during which a barber shop may be lawfully opened, it does in effect fix the maximum number of hours for barbers at 62 hours a week.

Closer to our present problem is the imposition of closing hours in other industries and occupations. The subject is carefully annotated in 55 A. L. R. 242. Suffice it to say that with respect to auctions of jewelry and similar articles at night, laundries, pawnbrokers and secondhand dealers, peddlers, pool or billiard halls, saloons, soft drink establishments, dance halls and in some cases shops and stores, the fixing of closing hours has been upheld. In Pennsylvania, in the case of Mt. Carmel Borough v. Fisher, 21 Pa. Superior Ct. 643, an ordinance fixing hours for a curbstone market was upheld. In general, regulations fixing a closing hour for business are valid

if the public health, safety, morals, or welfare may be affected by keeping the business open after certain hours: 11 Am. Jur. 1050, sec. 288.

The rationale running through the decisions upholding regulations fixing closing hours is that there must be some purpose connected with the public health or welfare subserved thereby. When the legislature finds something about the business of an auctioneer or a pawnbroker or a soft drink dispenser or a billiard hall keeper that requires regulating by fixing closing hours and believes the business may be appropriately regulated thereby, the courts are willing to admit that such view can reasonably be held. Can it be said as matter of law that there is nothing about the business of barbering that warrants the legislature in taking a similar view? In one case, State ex rel. v. Reeve, etc., 104 Fla. 196, 139 So. 817, 79 A. L. R. 1119, the Supreme Court of Florida in upholding regulation of barbers and beauty specialists laid down the principle, quoting a Washington case, that " 'Professions or trades operating directly on the person and thereby directly affecting the health, comfort and safety of the public may be regulated by the legislature under the police power, while other professions or trades cannot be so regulated, without depriving a citizen of his natural rights guaranteed by the Constitution.' "

There is some merit in the distinction sought to be made by the Florida court. The business of barbering is a rather personal and intimate one. Nowadays men, women, and children frequent barber shops. There is danger of disease. Can we say that the legislature acted not only unwisely but illegally in authorizing the fixing of the closing hours?

Appropriate motives may have prompted the legislature. There is the matter of inspection. Not only the Falco case but many other cases emphasize the close connection between the right to regulate in the interest of health and the right to fix hours within which the busi-

ness is to remain open. Furthermore, Judge Reader of Beaver County in the case of Guerrari v. Aliquippa, supra, points out that barber shops are places where people are apt to congregate, especially at night. The law seeks to avoid the situation where a barber shop is connected with some other business, expressly prohibiting barbering in a room with any other occupation. Sleeping is prohibited in rooms where barbering is done. Apparently in view of all the circumstances the legislature concluded that the whole situation might best be regulated by providing for closing hours. Both the act and ordinance are passed in the interest of public safety as well as health.

Before concluding this opinion it might be well to say that the situation presented by this ordinance might as well be faced. It seeks to establish opening and closing hours in an industry which, although relatively small, is well regarded, respectable, and necessary. Let us not be too strict in judging the actions of the legislature in imposing this regulation upon the barbering industry. In his now famous dissent in the bakeshop case, Lochner v. New York, 198 U. S. 45, 49 L. Ed. 937, holding unconstitutional a statute limiting employment in bakeries to 62 hours a week and 10 hours a day, Justice Holmes said, p. 76:

"Every opinion tends to become a law. I think that the word liberty in the Fourteenth Amendment is perverted when it is held to prevent the natural outcome of a dominant opinion, unless it can be said that a rational and fair man necessarily would admit that the statute proposed would infringe fundamental principles as they have been understood by the traditions of our people and our law. It does not need research to show that no such sweeping condemnation can be passed upon the statute before us. A reasonable man might think it a proper measure on the score of health. Men whom I certainly could not pronounce unreasonable would uphold it as a

first instalment of a general regulation of the hours of work. Whether in the latter aspect it would be open to the charge of inequality I think it unnecessary to discuss."

This may be the opening wedge for general legislation fixing or attempting to fix opening and closing hours. If so, let us view the matter openly and fairly. In modern urban life there is a tremendous congestion in cities during business hours. Hence, once generally recognized business hours are over, there is an immediate and tremendous exodus to the residential areas and tremendous traffic problems are involved. Once business hours are over, the police problem of the municipalities shifts. Instead of having the bulk of its people in the congested business area they are scattered over the residential districts and the problem of police protection is accordingly a different one. Under such circumstances can we say that the power which may regulate pool rooms and soft drink parlors and dance halls and saloons and auction establishments and pawnshops and curbside markets may not also regulate barber shops?

Remembering that it is not for the court to impose its opinion and its will upon the legislature, but that it is the duty of the court patiently to examine the situation and see whether the legislature has exceeded its clear constitutional limits, we cannot say that the ordinance in question is not a proper exercise of the police power of the Commonwealth of Pennsylvania.

Viewed in its broader aspects it is apparent that the action of the legislature in passing this statute is but part of a larger movement, bringing one occupation after another within the scope of its regulation. In Commonwealth v. Gardner et al., 133 Pa. 284, it was held that the legislature might regulate the business of itinerant peddlers. In Commonwealth v. Vrooman, 164 Pa. 306, an act prohibiting the issuing of contracts of insurance by a natural person or by a corporation unless one chartered by the State, was held constitutional. In Commonwealth ex rel. v. Humphrey et al., 288 Pa. 280, the licensing of engineers

was upheld, except that the provision exempting employes of interstate companies, who might practice at will, was stricken down. In Young v. Department of Public Instruction, 105 Pa. Superior Ct. 153, licensing of insurance brokers was upheld, although attorneys and justices of the peace were exempted. In Harris v. State Board of Optometrical Examiners, 287 Pa. 531, the licensing of optometrists was upheld. In particular, prohibitions against the maintaining of branch offices without the attendance of a practitioner and against practicing outside the regular place of business were upheld. In Powell v. Commonwealth, 114 Pa. 265, the regulation of the sale of oleomargarine was upheld. If the place where a lawful occupation is to be carried on may be regulated as in the Harris case, supra, may not the time during which a lawful occupation be followed be regulated as in this case?

One other matter may briefly be disposed of. Allusion was made at argument to the exemption of beauty parlors from the provision of this act. As was said by Mr. Justice Holmes in Keokee Consolidated Coke Co. v. Taylor, 234 U. S. 224, 58 L. Ed. 1288, 1290:

". . . it is established by repeated decisions that a statute aimed at what is deemed an evil, and hitting it presumably where experience shows it to be most felt, is not to be upset by thinking up and enumerating other instances to which it might have been applied equally well, so far as the court can see. That is for the legislature to judge unless the case is very clear."

To summarize, having in mind the admitted connection between the public health and the occupation of barber, so that the occupation is regulated in many jurisdictions, the necessity for fixing some reasonable limits within which barber shops must be inspected, the nature of barber shops as places for loiterers, and the modern social trend in the direction of limiting hours for many businesses in the interests of public health and security, we are not prepared to say that there exists no

reasonable basis for the statute and the ordinance here under inspection. Accordingly we make the following

*Order*

Now, July 3, 1939, the appeal of defendant, Frank Sullivan, is dismissed and his conviction is affirmed.