108 So.2d 889 (1959)
Melville P. ESLIN, Jr., Appellant,
v.
Charles J. COLLINS et al., Appellees.
Supreme Court of Florida.
January 21, 1959.
Rehearing Denied February 27, 1959.
Jones & Foerster, William D. Jones, Jr., Jacksonville, J.H. Rolfs, Miami, and J. Lewis Hall, Tallahassee, for appellant.
William S. Walker and Chester Bedell, Jacksonville, for appellees.
*890 ROBERTS, Justice.
The sole issue here is the constitutionality vel non of Ch. 57-129, Laws of 1957, which amended the Naturopathy Act, Ch. 462, Fla. Stat. 1955, F.S.A., in respects hereafter related. The 1957 amendatory Act was attacked in a suit brought by the appellant, a licensed naturopath, against the appellees, who are the members and the secretary of the Florida State Board of Health, on the ground that it denied to him the equal protection of the law guaranteed by the Declaration of Rights of the Florida Constitution and the Fourteenth Amendment to the United States Constitution. His complaint was dismissed in the lower court upon the motion of the appellees, and this appeal followed.
The practice of that school or branch of medicine known as naturopathy was first regulated in this state in 1927. By Ch. 12286, Laws of 1927 [appearing, with a 1943 amendment, as Ch. 462, Fla. Stat. 1955, F.S.A.] the Legislature defined the practice of naturopathy, provided for the examination and licensing of persons to engage in the practice in this state, and created the State Board of Naturopathic Examiners to carry out the provisions of the Act. A 1943 Act amended the 1927 Act in respects not material here.
The 1957 Act abolished the State Board of Naturopathic Examiners and repealed the sections of the old Act providing for the examination and licensing of new applicants to practice naturopathy. It provided, in effect, for the classification of presently licensed naturopaths as follows: (1) those who had been licensed and had practiced for at least fifteen years prior to the effective date of the Act, October 1, 1957; (2) those who had been licensed and had practiced for not less than two years prior to such date; and (3) those who had been licensed for less than two years as of such date. These three classes will be referred to hereafter as Class One, Class Two, and Class Three naturopaths, respectively.
Under the 1957 Act only Class One and Class Two naturopaths are entitled to renew their licenses annually; Class Three naturopaths can no longer practice under their existing licenses nor renew the same; and no new naturopathy licenses can be issued. Obviously, then, the net effect of the Act is to abolish naturopathy as a specially licensed branch of medicine at some uncertain date in the future when all presently licensed Class One and Class Two naturopaths have ceased to practice their profession because of death, disability or disinclination. At the same time it created a closed class of persons entitled to practice naturopathy as a specially licensed profession and, even, a closed class within a closed class, discussed hereafter.
It might be noted that the provision for the continuation of practice by Class One and Two naturopaths is not a "grandfather clause" of the usual type. In fact the statute here involved appears to be unique in this respect. Ordinarily, as applied to the regulation of a profession, a grandfather clause exempts from the examination pre-requisite to obtaining a license, those who were already bona fide engaged in the practice of a profession being regulated for the first time. See State ex rel. Garrison v. Reeve, 104 Fla. 196, 139 So. 817, 79 A.L.R. 1119; Doller v. Reid, 1948, 308 Ky. 348, 214 S.W.2d 584; Watson v. State of Maryland, 1910, 218 U.S. 173, 30 S.Ct. 644, 54 L.Ed 987; Dent v. State of West Virginia, 1889, 129 U.S. 114, 9 S.Ct. 231, 32 L.Ed. 623. "Such exception proceeds upon the theory that those who have acceptably followed the profession in the community for a period of years may be assumed to have the qualifications which others are required to manifest as a result of an examination before a board of medical experts." Watson v. State of Maryland, supra, 218 U.S. 173, 30 S.Ct. 644, 646, 54 L.Ed. 987. Since naturopaths licensed under the 1927 Act were expressly forbidden to practice medicine in any except the limited field prescribed by the Act, it is indeed whimsical to assume that their experience in the practice endows them with *891 the same qualifications as those who, in the future, will be required to take an examination and qualify as general practitioners in order to practice naturopathy.
We are not here concerned, however, with the propriety of the purported grandfather clause, as a whole, in its impact on the practice of naturopathy in general. The appellant is a Class Two naturopath; he is thus entitled to renew his license annually under the provisions of the 1957 Act. His complaint is directed to the special privileges given by the Act to Class One naturopaths, allegedly denying to him the equal protection of the law. He bases his contention on the following matters:
Under the 1927 Act, as construed by this court in In re Melser, 160 Fla. 333, 32 So.2d 742, and State Department of Public Welfare v. Melser, Fla. 1954, 69 So.2d 347, licensed naturopaths were authorized to prescribe and administer drugs, including narcotics. The 1957 amendatory Act specifically prohibited licensed naturopaths from prescribing or administering any drug or medicine "included within materia medica or listed in United States pharmacopoeia." Other limitations on the practice of naturopathy, as previously defined in the 1927 Act, were made by the 1957 Act. But these new limitations and prohibitions applied only to Class Two naturopaths, since a further proviso expressly stated that licensed naturopaths in practice for fifteen years (Class One naturopaths, in our terminology) "shall, as long as they may continue to renew their licenses, have the authority to practice naturopathy as defined by this section prior to this amendment, with the exception of prescribing narcotic drugs which they shall only be permitted to administer directly in cases of emergency justifying their use."
Thus, the 1957 Act not only created a closed class of specially licensed naturopaths who had been practicing for more than two years on October 1, 1957; it also created a closed class within that class, consisting of naturopaths who had been licensed and practicing for at least fifteen years as of that date. There can be no doubt that the treatment of Class One and Class Two naturopaths is unequal, and appellees concede as much. It is well settled that a legislative classification should "have some just relation to, or reasonable basis in, essential differences of conditions and circumstances with reference to the subject regulated, and should not be merely arbitrary; and all similarly situated * * should be included in one class, at least where there are no practical differences that are sufficient to legally warrant a further or special classification in the interest of the general welfare." Seaboard Air Line Ry. v. Abe Simon & Co., 56 Fla. 545, 47 So. 1001, 1003, 20 L.R.A.,N.S., 126. See also Di Lustro v. Penton, 1932, 106 Fla. 198, 142 So. 898; State ex rel. Coleman v. York, 139 Fla. 300, 190 So. 599.
We can conceive of no reasonable basis for the classification here attempted to be made. Both classes of naturopaths were required to take the same training and pass the examination required as a condition of obtaining a license to practice naturopathy. Since the requirement of fifteen years of practice for Class One naturopaths is tied to a definite date, October 1, 1942 (15 years prior to the effective date of the 1957 Act) the attainment of this qualification by Class Two naturopaths who continue in the practice for another thirteen years will be of no avail. No provision is made for Class Two naturopaths to be examined in the field of prescribing drugs in order to prove that they are equally qualified in this field with Class One naturopaths.
The purpose of the purported "grandfather clause" of the Act was to save the right of naturopaths licensed for more than two years to continue in the practice. Assuming without deciding that the Legislature could validly create such a closed class, we can conceive of no reasonable basis for the attempt here made to grant special privileges to a limited group, itself a closed class, within the larger closed *892 class. Accordingly, it must be held that the legislative classification is arbitrary and unreasonable and thus a denial to the appellant of the equal protection of the law. See Riley v. Lawson, 106 Fla. 521, 143 So. 619; State ex rel. Vars v. Knott, 135 Fla. 206, 184 So. 752; Morey v. Doud, 1957, 354 U.S. 457, 469, 77 S.Ct. 1344, 1 L.Ed.2d 1485; 11 Am.Jur., Constitutional Law, § 285, p. 1046.
The 1957 Act did not contain a "severability" clause, and the parties apparently concede that the entire Act must fall if the appellant's contention is sustained. We agree. Reference to the legislative history of the Act reveals that it was originally introduced as House Bill 75, which would have repealed the entire Naturopathy Act. A Committee Substitute for House Bill 75 repealed only a portion of the 1927 Act and added the provisions authorizing naturopaths who had been licensed and practicing for more than two years to continue in the practice. The provisions relating to naturopaths who had been licensed and practicing for fifteen years was added, by amendment, in the Senate. On the question of severability it has been said that "[t]he test is whether this court can say that the Legislature would not have enacted the law under scrutiny except for the provision which is herein held unconstitutional and invalid." State ex rel. Limpus v. Newell, Fla. 1956, 85 So.2d 124, 128. Obviously, it cannot be said with any degree of certainty that the Senate would have concurred in the Bill approved by the House without the addition of the amendment relating to Class One naturopaths. So the entire Act must fall.
For the reasons stated we hold that Ch. 57-129, Laws of 1957, is unconstitutional and of no force and effect. Accordingly, the decree here reviewed is reversed and the cause remanded for further proceedings not inconsistent herewith.
It is so ordered.
TERRELL, C.J., and HOBSON, J., concur.
DREW, J., concurs with opinion.
THORNAL, J., concurs in judgment only.
DREW, Justice (concurring specially).
In the year 1905 the Florida Legislature passed a law segregating white and colored persons in streetcars operated within the state.[1] The law required that each car be divided into divisions set apart and provided for white and colored passengers and made it unlawful for any passenger using said streetcar to occupy any portion of it assigned to a person of the other color. Section 7 of the act provided "the provisions of this act shall not apply to colored nurses having the care of white children or sick white persons."
This Court held Section 7 of the act unconstitutional and void as violative of the Fourteenth Amendment to the Constitution of the United States.[2] After having reached this conclusion the Court then determined that the entire act must fall because Section 7 was of such import that without it the remaining portions of the act would cause results not contemplated or desired by the Legislature.[3]
The conclusion reached by this Court in that case follows the great weight of authority in this country.[4]
*893 The conclusion is inescapable that we may neither ignore nor strike down the proviso creating the monopoly to practice this profession in the two classes specified in the main opinion. This proviso being invalid, it naturally follows that the whole act must fall. Moreover, it seems to me that the Legislature exceeds its power completely when it condemns a profession as being dangerous as to the general welfare [as it must to abolish it] and in the same breath allows a selected class of individuals to continue the practice of such condemned profession until the death of the last survivor.
For these, as well as the views expressed in the opinion prepared by Mr. Justice ROBERTS, I concur in said opinion and judgment.
THORNAL, Justice (concurring in judgment).
I concur in the judgment of reversal only to the extent that the majority opinion determines that the classification of naturopaths who have practiced at least fifteen years "prior to October 1, 1957" makes the act unreasonable and discriminatory as against the class of naturopaths represented by the appellant. However, I would merely eliminate from Section 462.01, Florida Statutes, F.S.A., the words and figures "prior to October 1, 1957". This is the language which produces the discriminatory aspect of the statute. When eliminated, the result would be that naturopaths such as appellant who have practiced more than two years but less than fifteen could eventually acquire the privileges granted to those who have practiced fifteen years.
I do not agree that this entire statute should be stricken down. Our duty is to sustain a legislative enactment if any sound basis for doing so can be found. I think the invalidating language quoted above can be stricken and the remainder of the act permitted to stand under the rule of State ex rel. Limpus v. Newell, Fla. 1956, 85 So.2d 124, 125, where we held that upon striking the unconstitutional provisions of an act, we would not undertake to strike down the entire act unless we could "say that the Legislature would not have enacted the law under scrutiny except for the provision" which is held unconstitutional.
A careful examination of the subject statute reveals a clear legislative intent to make drastic revisions of the existing laws governing the practice of naturopathy. The pre-existing Board of Naturopathy is abolished and its functions transferred to the State Board of Health. Numerous sections of the former statutes are repealed. In his message to the Legislature in 1957, the Governor recommended outright abolition of the privilege to practice naturopathy in Florida. It is perfectly obvious to me that the statute under assault was intended as a step in that direction.
The history of this legislation as it proceeded through the House and Senate leads me to feel that the unconstitutional provision was a mere incident to the remainder of the act and I cannot come to the view that the Legislature would have declined passage with the invalid language stricken. I think the remainder of this statute should be allowed to stand as enacted.
For these reasons I concur only in the judgment of reversal.

Order Denying Rehearing
PER CURIAM.
The petition for rehearing is denied.
TERRELL, C.J., and HOBSON, ROBERTS and DREW, JJ., concur.
*894 THORNAL, J., dissents.
THORNAL, Justice (dissenting).
With abounding respect for the judgment of the majority, I am compelled to insist that in my view a long-established rule of statutory construction has gone awry in the majority opinion. For this reason I would grant the petition for rehearing in order to re-establish a rule which appears to me to be controlling.
I have no difficulty in accepting the majority view that the legislative effort to create a class within a class, without a reasonable basis in essential differences between the groups, is a denial of equal protection of the law. However, it appears to me that the objectionable aspects of this statute can be eliminated by striking the words "prior to October 1, 1957" from Section 462.01, Florida Statutes, F.S.A. By doing this we can preserve the statute and effectuate what appears to me to be an obvious legislative intent. As pointed out in my original special concurring opinion, Chapter 57-129, Laws of Florida 1957, F.S.A. § 462.01 et seq., was a perfectly obvious legislative effort to curtail drastically the practice of naturopathy in the State of Florida. In his message to the Legislature, the Governor urged the total prohibition of the practice of the profession in this state. He pointed out that only six other states currently recognize the profession and that there are no schools in the entire nation presently offering courses in naturopathy conforming to the requirements of the laws of the State of Florida. See p. 13, Journal of the House of Representatives, Regular Session 1957. The Legislature then proceeded to effectuate the Governor's recommendation.
While the act in question did not abolish the practice of the profession in its entirety, it did close the further extension of the practice by specifically prohibiting continued practice by those who had engaged in the profession in Florida for less than two years. In addition, the State Board of Naturopathic Examiners was abolished and all of the legislative authority for the exercise of any powers by the Board was repealed. The functions of this Board were delivered over to the State Board of Health, When this suit was filed, the Board of Naturopathic Examiners had been put out of existence by legislative fiat. All of this this majority opinion would now undo.
The majority strikes down an entire legislative enactment under the assault of the appellant who was adversely affected by what appears to me to be an incidental aspect of the statute and whose rights would be recognized and preserved by eliminating the objectionable language and thereby eliminating the unfair classification into which the appellant was projected.
It is the duty of courts to exert every possible effort to sustain legislative enactments against assaults on their constitutionality. We are not endowed with any judicial prerogative to strike them down in the absence of a clear violation of the Constitution. On the contrary, if we can devise any legitimate process of reasoning that will uphold the act of the Legislature, it is our duty to do so. In this instance it is of no consequence at all that the act lacked a severability clause. The authority of a court to eliminate an invalid clause from an act of the Legislature and preserve, if possible, the remainder of the statute does not derive from any prerequisite legislative authorization. It inheres in the judicial power and responsibility to preserve the constitutionality of the enactment absent the invalid provision if it is at all possible to do so. State v. Calhoun County, 126 Fla. 376, 170 So. 883. We have on more occasions than one announced our adherence to the proposition that we would not declare an entire act invalid where a portion thereof is unconstitutional unless we are compelled to determine judicially that the Legislature would not have enacted the law except for the presence of the unconstitutional provision. The content of Chapter 57-129, Laws of 1957, its legislative history as reflected by committee consideration *895 as well as amendments on the floor, the strong executive statement with reference to the objective to be accomplished, and in the ultimate the obvious purpose of the statute, all lead me to conclude that the Legislature would have enacted this statute even without the unconstitutional provision. At any rate, I certainly cannot conclude that the Legislature would not have enacted the statute if the provision in question had been eliminated. After all, this is the test which we have consistently applied and which, I think, we should apply in this instance. State ex rel. Limpus v. Newell, Fla. 1956, 85 So.2d 124; State v. Calhoun County, supra.
I, therefore, respectfully dissent from the views of the majority in denying the petition for rehearing. I would grant the petition and revise the original opinion in accordance with the views hereinabove expressed.
NOTES
[1] Chapter 5420, Laws of Florida, Acts of 1905.
[2] State v. Patterson, 50 Fla. 127, 39 So. 398, 400, 7 Ann.Cas. 272.
[3] The exact language used was:

"The settled rule is that if the obnoxious section or part is of such import that the other sections or parts, without it, would cause results not contemplated or desired by the Legislature, then the entire statute must be held inoperative."
[4] The general rule is that:

"If such a proviso operates to limit the scope of the act in such a manner that by striking out the proviso the remainder of the statute would have a broader scope either as to subject or territory, then the whole act is invalid because such extended operation would not be in accordance with the legislative intent." 11 Am. Jur. 855, para. 161.
Also see Connolly v. Union Sewer Pipe Co., 184 U.S. 540, 22 S.Ct. 431, 46 L.Ed. 679.