ROBERTS, Judge and HOBSON, Judge (Retired).
Petitioners, who are certificated common carriers, seek a writ of mandamus directed to the Florida Railroad and Public Utilities Commission. They appear to be aggrieved because of certain orders entered by said Commission, which orders authorize some “For Hire” permittees to transport road building and construction aggregates which under “For Hire” permits they had been transporting prior to the enactment by the 1963 Legislature of Chapter 63-416, and some of which orders also authorize certain auto transportation companies which had been transporting, prior to the passage of the 1963 law, the same aggregates without authority, to continue to transport them. Petitioners say that the Commission failed to follow the proper procedure prerequisite to the issuing of such authority.
The question posed by petitioners is: “Does the respondent have the authority under Chapter 323.031, Florida Statutes [F.S.A.], to issue limited common carrier certificates to ‘For Hire’ permittees and nonauthorized carriers ex parte, without a public hearing and without notice to petitioners who were previously certificated common carriers ?”
The respondents rephrased this query and stated it in the following language: “Did the respondents administer the ‘Grandfather Rights’ as provided for in Chapter 63-416, Laws of Florida, which amended Chapter 323, Florida Statutes, by adding § 323.-031, in such a manner as to substantially comply with the requirements of the law?”
The question concerning the lack of notice to petitioners does not give us great concern because after the orders were issued copies thereof were sent to petitioners and they filed petitions for Reconsideration and subsequently were heard upon such petitions. Speaking loosely, they had “their day in court.” Failure to give the required notice was at most harmless error.
The contention that there should have been a public hearing is not well taken. Chapter 63-416, 5(f) provides “[a] public hearing may be held, if in the opinion of the commission the objections, if any, require such hearing”. This provision of the statute grants to the Commission discretionary power to determine whether a public hearing is required or would serve any useful purpose. In this case the Commission properly held that there was no' need for a public hearing because the question was one of law and not of fact.
The gravamen of the complaint of the petitioners appears to be that “For Hire”' permittees have been elevated to the dignity of limited certificated common carriers by the action of the Commission, and without the need of a showing of public convenience and necessity. This may be true but it is not inconsistent with the provisions of the 1963 statute. Obviously the Legislature intended to create out of the chaotic situation attendant upon the transportation of road building and construction aggregates some degree of uniformity and consistency. Certificated common carriers were transporting road building and construction aggregates and in some instances “For Hire” permit holders were transporting these aggregates. Some autc transportation companies had been transporting road building and construction aggregates in the State without authority.
Chapter 63-416, Laws of Florida 1963, contains three “Grandfather Clauses”' which appear in Subsections 4(a), (b) and (c). Subsection 4(a) is the “Grandfather Clause” which took care of the petitioners. *209 Subsection 4(b) is the one which provided for the “For Hire” permittees to have their permits re-issued and continue to transport road building and construction aggregates in the territory previously served by them. And Subsection 4(c) permitted auto transportation companies which had operated without authority prior to January 1, 1963, to qualify for authority to continue such operation by making an application to the Commission before December 1, 1963.
Certificated common carriers, such as petitioners, falling in the classification set forth in Subsection 4(a), could have their certificates re-issued as a “matter of right and of course”. The “For Hire” permit-tees under Subsection 4(b) could request the Commission to re-issue their permits in accordance with the provisions of the act, but the Commission is not required to re-issue them as a matter of right. Auto transportation companies which had been transporting road building and construction aggregates without authority also could apply for authority to continue in such transport business, but, here again, such authority would not issue as a matter of right.
Petitioners contend that Subsection 4(b), which states in part, “the commission may reissue its permit in accordance with the provisions of this act”, should be construed to require notice of a public hearing and showing of public convenience and necessity before the Commission could re-issue a permit to a holder of a previously existing “For Hire” permit.
We cannot agree. Such construction would result in granting a preferential status to auto transportation companies which had previously operated without any permit or authority and had made no attempt whatsoever to comply with the laws of Florida, for there is no language similar to that just above quoted in Subsection (4) (c). Since all auto transportation companies, to-wit: Certificated common carriers; holders of “For Hire” permits and unauthorized transport companies which had been transporting road building and construction aggregates prior to January 1, 1963 were included in the “Grandfather Clauses”, it is inconceivable that the Legislature intended to give a preference to those auto transportation companies which had operated without authority in the past. Moreover were we to adopt petitioners’ construction of Subsection (4) (b) we would, in effect, be saying that the Legislature performed a useless and purposeless act[1] by including said Subsection in the 1963 amendment. This is so because without Subsection (4) (b) “For Hire” permittees, just as any of the other auto transportation companies in this State, could have applied for authority under Chapter 323.031, Subsections (1), (2) and (3), to transport road building and construction aggregates without the enactment of Subsection (4) (b).
We hold that Subsection (4) (b) clothed the Commission with discretion to re-issue, or for good reason [2] to refuse to re-issue a permit to a “For Hire” permittee who might apply therefor.
The petitioners say that the Commission erred in issuing certificates to holders of “For Hire” permits rather than reissuing permits and that in so doing former “For Hire” permittees have been elevated to the level of holders of common carrier certificates.
It appears to be true that the Commission has, as in the case of Mr. C. R. Stevenson, issued limited common carrier certificates instead of reissuing “For Hire” permits. We should bear in mind, however, the fact that it has not been shown that any one of these so-called certificates *210 •has granted to a former “For Hire” per-mittee any greater right or privilege than he enjoyed under his original “For Hire” permit. To say under such circumstances that a limited common carrier certificate is of greater significance than a “For Hire” permit is nothing more nor less than engaging in a “play on words”.
Furthermore the Commission had no alternative. It was required in order to comply with the obvious intent of Subsection 4(b) to issue limited common carrier certificates to those “For Hire” per-mittees who previously were authorized to transport aggregates in more than one county. This is so because Chapter 323.-031 states that no transportation company shall operate in the transport of the subject aggregates for compensation without a certificate that public convenience and necessity require such operation “except as hereinafter provided in § 323.051, for any motor carrier which proposes to operate solely as a for hire carrier in a single designated county.”
When we separate the wheat from the chaff we find petitioners’ real complaint is that the Commission has authorized auto transportation companies which come within the categories set forth in Subsections 4(b) and (c) to transport road building and construction aggregates without first making a showing of public convenience and necessity.
The 1963 act, Chapter 63-416, can-celled existing authority for all auto transportation companies which had theretofore transported road building and construction aggregates, and even those transportation companies classified as belonging in Subsection 4(a) were through unless they should notify the Commission and have their certificates re-issued. In other words, the Legislature wiped the slate clean. Indeed, in this regard the act was a new licensing and regulatory law. We cannot emphasize too greatly the fact we are dealing essentially with the so-called “Grandfather Clauses”. The whole purpose of a “Grandfather Clause” in a licensing statute is to exempt from statutory regulation, imposed for the first time, those persons already in the field who have followed the trade and may be presumed to possess necessary qualifications. In the case of Commonwealth Air Transport v. Stuart, 303 Ky. 69, 196 S.W.2d 866 at page 869 the Kentucky court said:
“In initial regulatory statutes they [Grandfather clauses] satisfy ‘the dictates of fairness by affording sanction for enterprises heretofore established.’ United States v. Maher, 307 U.S. 148, 59 S.Ct. 768, 771, 83 L.Ed. 1162. They [Grandfather clauses] serve to avoid hardships which would result from forcing a carrier to justify his existing business in terms of public convenience, and recognise as vested such rights as had grown up before the enactment of the statute.” (Emphasis supplied.)
The Supreme Court of Florida, in Eslin v. Collins, 108 So.2d 889 on Page 890 (Fla.1959) in dealing with the subject of “Grandfather Clauses”, stated:
“Ordinarily, as applied to the regulation of a profession, a grandfather clause exempts from the examination pre-requisite to obtaining a license, those who were already bona fide engaged in the practice of a profession being regulated for the first time. See State ex rel. Garrison v. Reeve, 104 Fla. 196, 139 So. 817, 79 A.L.R. 1119; Doller v. Reid, 1948, 308 Ky. 348, 214 S.W.2d 584; Watson v. State of Maryland, 1910, 218 U.S. 173, 30 S.Ct. 644, 54 L.Ed. 987; Dent v. State of West Virginia, 1889, 129 U.S. 114, 9 S.Ct. 231, 32 L.Ed. 623. ‘Such exception proceeds upon the theory that those who have acceptably followed the profession in the community for a period of years may be assumed to have the qualifications which others are required to manifest as a result of an examina *211 tion before a board of medical experts.’ ”
We hold the view that the Legislature actually determined public convenience and necessity. It patently found that all auto transportation companies which had theretofore been transporting road building and construction aggregates and which could meet the requirements of Subsections 5(a), (b) and (c) were essential to the public convenience and necessity in this era of phenomenal growth of the great State of Florida.
As we have previously stated, there would be no need for Subsections 4(b) and (c) unless it had been the intention of the Legislature to relieve those auto transportation companies transporting road building and construction aggregates before the passage of the act from making a showing of public convenience and necessity. They are required to do nothing more than is described in Subsections 5(a), (b) and (c).
The complaint that the Commission erred in failing to promulgate rules and regulations is without merit. Subsection (5) of Chapter 232.031, Florida Statutes, states “The commission is authorized to adopt reasonable rules and regulations * * * ”. The same Subsection then sets forth the following guidelines: (a) Proof required of said prior operations of applicant, limited to vehicles registered in applicant’s name; (b) applicant’s financial ability showing adequate financial means to operate successfully a motor carrier; (c) collection of past due mileage tax from January 1, 1961 to proposed date of issuance of certificate or permit; (d) notice of application to other transportation companies serving any part of the territory sought by applicant to transport any road building and construction aggregates; (e) obj ections by motor carriers holding similar authority applied for; and (f) a public hearing may be held, if in the opinion of the Commission the objections, if any, require such hearing.
We are in accord with the Commission which ruled that the statute merely authorized the adoption of rules and did not require that such rules be adopted. The Commission further held and we now quote:
“Also, the six rule subjects designated in Sub-section (5) are either so complete in themselves as to make rules unnecessary or they are subjects which can best be dealt with on an individual basis in each particular case, or they deal with procedural matters already covered by existing Commission rules. Because of these circumstances the Commission considered that it could more expeditiously perform its functions under the law without the unnecessary delay of first adopting rules.”
There is one other complaint of petitioners which we deem worthy of discussion. Petitioners take exception to the fact that the Commission based its grant of authority on affidavits as to prior operations of applicants under Subsection 4(c). We do not find in this record any evidence of an attempt on the part of petitioners to point out to the Commission any instance wherein an applicant under the “Grandfather Clause” (Subsection 4(c)) misrepresented any material fact set forth in its, his or their affidavit. Chapter 310-5.07, Florida Administrative Code, which is a rule of the Florida Railroad and Public Utilities Commission, reads as follows:
“Misrepresentations. — Certificates, certificates of registration or permits may be denied, suspended or revoked by the Commission upon proof of material misrepresentation made to the Commission by or on behalf of the applicant in seeking such operating rights.” (Emphasis supplied.)
Need more be said? We think not.
We cannot believe that counsel for petitioners is very serious in suggesting the *212 possible unconstitutionality of the 1963 act which he has oppugned, although were we to adopt his construction of Subsection 4(b) the question of the validity of the statute might be at least “fairly debatable”.
We have examined this record very carefully and have concluded that the Commission has handled this matter as well as it could possibly have been handled and in substantial compliance with the requirements of the law.
The petition for writ of certiorari should be and it is hereby
Denied.
THOMAS, Acting C. J., and O’CON-NELL and CALDWELL, JJ., concur.

. Courts should never indulge such presumption.

. Permittee’s failure to comply with Subsections (5) (a), (b) and (c) of Chapter 63-416.