Dorothy W. Glisson Secretary Department of Professional and Occupational Regulation Tallahassee
QUESTION:
May an osteopathic physician associate professionally with a naturopath?
SUMMARY:
Since a naturopathic physician's medical and statutory standards and qualifications are not at least the same as those statutorily prescribed standards and qualifications governing the practice of osteopathic medicine, an osteopathic physician is prohibited by Rule 21R-3.14, F.A.C., from associating professionally with a practicing naturopathic physician.
Your question is answered in the negative.
Rule 21R-3.14, F.A.C., as adopted by the Florida State Board of Osteopathic Medical Examiners, states:
 An osteopathic physician shall not associate professionally with any other member of the healing arts whose medical and statutory standards and qualifications are not at least the same as those standards and qualifications governing the practice of osteopathic medicine. (Emphasis supplied.)
It is clear from the foregoing, therefore, that the test to be applied is whether a naturopathic physician's medical and statutory standards and qualifications are at least the same as those of an osteopathic physician. The test would not be based on an individual naturopathic physician's standards and qualifications but on naturopathy as a healing art, since the statutory standards and qualifications are the same irrespective of each individual physician's characteristics and background.
In this regard, one must first examine the naturopathy law, Ch. 462, F. S. Therein, naturopathy is defined as follows:
 For the purpose of this law, `natureopathy' and `naturopathy' shall be construed as synonymous terms and are hereby defined to mean the use and practice of psychological, mechanical, and material health sciences to aid in purifying, cleansing, and normalizing human tissues for the preservation or restoration of health, according to the fundamental principles of anatomy, physiology, and applied psychology, as may be required. Naturopathic practice employs, among other agencies, phytotherapy, dietetics, psychotherapy, suggestotherapy, hydrotherapy, zone therapy, biochemistry, external applications, electrotherapy, mechanotherapy, mechanical and electrical appliances, hygiene, first aid, sanitation, and heliotheraphy [sic]; provided, however, that nothing in this chapter shall be held or construed to authorize any naturopathic physician licensed hereunder to practice materia medica or surgery or chiropractic, nor shall the provisions of this law in any manner apply to or affect the practice of osteopathy, chiropractic, Christian Science, or any other treatment authorized and provided for by law for the cure or prevention of disease and ailments. [Section 462.01, F. S.; emphasis supplied.]
The naturopathy law reveals that only those naturopathic physicians who were practicing and licensed within the state on July 1, 1959, could renew their licenses thereafter, with no new license applications to be granted. This abolishment of the licensing powers of the State Board of Naturopathic Examiners was prompted by an earlier legislative attempt, in 1957, to curtail drastically the practice of naturopathy in the state. The legislative history and reasoning is recounted in the case of Eslin v. Collins, 108 So.2d 889 (Fla. 1959), wherein Justice Thornal traces the 1957 Legislature's attempt at p. 894:
 In his message to the Legislature, the Governor urged the total prohibition of the practice of the profession in this State. He pointed out that only six other states currently recognize the profession and that there are no schools in the entire nation presently offering courses in naturopathy conforming to the requirements of the laws of the State of Florida. See p. 13, Journal of the House of Representatives, Regular Session 1957. The Legislature then proceeded to effectuate the Governor's recommendation.
Due to Eslin, supra, holding that legislative attempt unconstitutional, on grounds not pertinent to the issue now presented, the 1959 Legislature thereafter abolished all new or future licensing in the area.
The naturopathy law further reveals that a doctor of naturopathy must observe all regulations in regard to any and all matters pertaining to the public health in the same manner as is required of other practitioners of the healing arts. Section 462.11, F. S.
Posteducational requirements for renewal of licenses include annual attendance at the 2-day educational program of the Florida Naturopathic Physicians Association, Inc., or board-approved substitutes. Section 462.18, F. S.
Educational requirements for new licensing (prior to the 1959 abolishment thereof) were as follows:
 The said applicant shall furnish evidence, satisfactory to the board, that he is more than twenty-one years of age; that he is of good moral character; that he has completed a high school course and taken a four-year course of nine months each, or more, in a reputable, chartered school or college of naturopathy, wherein the curriculum of study included instruction in the following branches, namely: Anatomy, physiology, histology, pathology, hygiene and sanitation, chemistry, diagnosis, symptomatology, nonsurgical gynecology, midwifery, jurisprudence, first aid, philosophy, and the science and practice of naturopathy. [Section 462.05, F. S. 1955.]
There are presently no adopted rules for the State Board of Naturopathic Examiners.
Finally, concerning the statutory standards and qualifications of naturopathic physicians, the Florida Supreme Court has considered the naturopathy statute and the authority of naturopathic physicians to treat and prescribe for patients. The court stated, in State Department of Public Welfare v. Melser, 60 So.2d 347
(Fla. 1953), that in order to eliminate any doubt as to what a naturopathic physician could not do, consideration should be given to the first proviso of s. 462.01, F. S. The provision, in effect, prohibits a naturopathic physician from `practice (of) materia medica [generally, the usage and dosages of drugs] or surgery . . . .' A naturopathic physician, the court held, may treat sick and injured persons only for the purposes of purifying, cleansing and normalizing human tissue and, even then, is limited to certain prescribed methodologies: `Psychological, mechanical and material health sciences.'
An examination of the osteopathic medical and statutory standards and qualifications show major apparent differences.
An osteopathic physician can be qualified by statute to practice surgery as well as other fields of medicine and has all the rights and is of equal rank and grade as physicians and surgeons of the allopathic, homeopathic, and eclectic schools of medicine. See ss. 459.02, 459.07(2) and 459.13, F. S.
Section 459.06, F. S., requires osteopathic applicants for examination to have had three years of preprofessional education, and to have served a resident internship of not less than 12 months in a hospital approved by the State Board of Osteopathic Medical Examiners and the American Osteopathic Association. Standards of professional education for practice as an osteopathic physician and surgeon are fixed in s. 459.07(1), F. S.:
 The applicant shall be a graduate of a professional school or college of osteopathy which requires as a prerequisite to graduation a 4 years' course or 36 months, covering the standard curriculum, as defined in s. 459.08, and giving instructions in all the subjects necessary to educate a thoroughly competent general osteopathic physician and surgeon, including but not limited to, obstetrics and surgery, and embodying instructions in drugs, anesthetics, antiseptics, germicides, parasiticides, narcotics, and antidotes, to teach principles of operative surgery and surgical diagnosis leading to the degree of doctor of osteopathy.
Section 459.08, F. S., sets forth the curriculum for a college of osteopathy, including many subject areas not mentioned by the pre-1959 legislation concerning professional educational standards of a naturopathy student. Examination of osteopathic physicians and surgeons embraces the general subjects and topics as set forth within s. 459.08.
Section 459.191, F. S., details the annual education requirements of an osteopathic license holder, requiring a minimum of 25 hours of refresher training or postgraduate study in approved areas as set forth in this section.
Importantly, in would appear that the Legislature has decisively set forth the answer to whether the medical standards and qualifications of naturopathic physicians are at least the same as those of an osteopath. Section 459.07(2), F. S., states:
 Physicians and surgeons of the osteopathic school of medicine are to have all rights and be of equal rank and grade as the physicians and surgeons of the other three schools of medicine designated as allopathic, homeopathic and eclectic.
And, s. 459.13(2), F. S., provides:
 Osteopathic physicians and surgeons licensed under this chapter shall have the same rights as physicians and surgeons of other schools of medicine with respect to the treatment of cases or holding of offices in public institutions.
The Supreme Court has held to the contrary concerning naturopathic physicians in State Department of Public Welfare v. Melser, supra, wherein the court upheld the right of the former Florida Department of Public Welfare to distinguish between naturopathic physicians' prescriptions and those of the various classes of other physicians in the agency's disbursal of welfare moneys.
It is readily apparent from the foregoing that the two schools of healing art differ widely in their medical and statutory standards and qualifications. Naturopaths, by virtue of the naturopathy statute, do not possess statutorily required qualifications equal to those prescribed for osteopathic physicians. Chapter 462, F. S., as construed by the Supreme Court in Melser, supra, prohibits naturopaths from practicing surgery or materia medica and, even in a naturopath's statutorily authorized areas of practice, he is limited to those agencies, uses, and practices specifically enumerated in s. 462.01, F. S. Osteopathic physicians are not so limited and possess a higher degree of statutorily granted rank and rights. Too, educational and posteducational requirements are dissimilar in major areas.
A naturopathic physician, therefore, does not possess `medical and statutory standards and qualifications . . . at least the same as those . . . governing the practice of osteopathic medicine,' within the purview of Rule 21R-3.14, F.A.C. Application of the rule would therefore prohibit the professional association between practicing osteopathic and naturopathic physicians.
Prepared by: Joseph W. Lawrence II, Assistant Attorney General