WIGGINTON, Judge.
Appellant, a duly licensed life insurance agent for Northwestern Mutual Life Insurance Company, has appealed an order of appellee Insurance Commissioner which found him guilty of violating certain statutes regulating trade practices in the insurance business, and placed him on probation for a period of one year. It is contended that the evidence fails to support the findings and conclusions upon which the order is predicated.
The undisputed facts established by the record reveal that in July of 1957 one Dr. Weinkle of Miami Beach purchased three ordinary life insurance policies from Fidelity Bankers Life Insurance Corporation through its local agent, one Ira Mogul. During the two year period which followed Dr. Weinkle became apprehensive as to the financial stability of the company whose policies he had purchased. In July 1959 Weinkle decided to purchase another life insurance policy and thereupon contacted appellant. Weinkle expressed dissatisfaction with the three policies which he held with Fidelity, and requested information concerning Northwestern and the type of policy it was prepared to offer. In .response to this inquiry appellant produced and exhibited for Weinkle’s examination and study the current edition of Best’s Life Insurance Reports, which ds an authoritative document containing statistical data and other information concerning recognized insurance companies operating in this country. From this source Weinkle ascertained the respective financial condition of Northwestern and Fidelity. He was also furnished other pertinent data concerning Northwestern and examined a specimen form of policy issued by it. Based upon this information and his own independent judgment, Weinkle purchased from appellant a life insurance policy issued by Northwestern. At the same time he decided to replace the three Fidelity policies which he held with Northwestern policies. When all four policies were delivered, he accepted them and paid the annual premium on each, permitting the three policies which he held with Fidelity to lapse.
Upon being notified that the Fidelity policies had lapsed, Mogul contacted Weinkle in an endeavor to persuade him to reinstate them. During this discussion Mogul made certain points concerning the wisdom of Dr. Weinkle’s decision which raised questions that appellant was requested to answer. The oral exchange of sales talk between the two insurance agents produced no satisfactory answers and served only to confuse Dr. Weinkle. In order to clarify the situation appellant volunteered to prepare a memorandum in which he would endeavor to set forth a comparative analysis of the life policies issued both by Northwestern and Fidelity, pointing up the advantage and disadvantages to Weinkle of the policies issued by each company. At the time of this offer agent Mogul was invited to furnish Weinkle a similar memorandum. In pursuance of this undertaking Collignon prepared and delivered to Dr. Weinkle a memorandum referred to in this proceeding as a statement, comparative analysis or statistical report containing an evaluation of the relative advantages and disadvantages between the life policies issued by Northwestern and Fidelity. This memorandum was prepared and delivered on October 16, 1959, and a copy was furnished to Mogul for his information and use in preparation of the memorandum to be fur *248 nished by him. It is this memorandum which formed the basis of the charges against appellant for which he stands convicted.
In the preparation of the questioned memorandum appellant used only standard reference sources for the facts set forth therein. It covers thirty different items of comparison which appear in one or more of the reference works utilized in its preparation. This is the first memorandum of its kind appellant had ever attempted to formulate in the course of his insurance business. He testified that it was relatively complete, and to the best of his understanding was an honest presentation of the items included therein.
Mogul, for reasons best known to him, declined to prepare or furnish to Weinkle a memorandum of any kind'which could have served to resolve the questions he had raised during his conference with Weinkle, or for the purpose of questioning or correcting the accuracy of any facts, comparisons, or statements of opinion contained in appellant’s memorandum. Instead, Mogul prepared a letter which he requested Dr. Weinkle to sign. This letter stated that the Fidelity policies had been cancelled not because of any cost comparisons, but because appellant had convinced Weinkle of Fidelity’s financial instability. Dr. Weinkle refused to sign this letter because in his opinion it did not state the true facts. He did, however, write a letter to Mogul in which he outlined in detail the factors which influenced his decision in favor of the Northwestern policies, which factors convinced him that it was to his advantage to follow the course lie had previously adopted. Weinkle testified that the purpose of writing this letter was to clearly explain his position in the matter, and to furnish Mogul an opportunity to point out any errors or mistakes known to him which may have influenced the decision. Mogul failed to .reply to this letter or to furnish any information in writing to Weinkle or to appellant challenging the accuracy of the memorandum in question, or the conclusions stated in Weinkle’s communication. Instead, Mogul lodged with respondent commissioner a complaint against appellant charging him with a violation of the statutes of which he was ultimately found guilty.
The complaint filed in this proceeding contains three charges. Since the Commissioner failed to find any evidence to sustain the first charge alleged in the complaint, we will confine our discussion to the remaining charges set forth therein. The second charge alleges that appellant prepared, issued and circulated a statement or report represented to be an evaluation of the relative advantages and disadvantages of replacing life insurance policies issuedby Fidelity with policies of Northwestern, in which statement or report appellant misrepresented or made misleading statements-as to the terms of the policies issued or to-be issued, or the benefits or advantages-promised thereby, or made misleading representations or misrepresentations as to the financial condition of Fidelity. The remaining charge alleges that appellant made- and issued the mentioned statement or report containing misleading statements, in-nuendoes or incomplete comparisons maliciously critical of or derogatory to the-financial condition of Fidelity.
The testimony in the case was taken before a special examiner who transmitted' his report to the commissioner without findings, conclusions or recommendations. The record reveals that Mogul, Fidelity’s-agent, was present throughout the hearing, but failed to testify in support of the charges against appellant. The record' further reveals that Fidelity was also represented at the hearing by its counsel who-freely participated in collaboration with' counsel for the Commissioner in an endeavor to support the charges as alleged. Fidelity’s counsel also appears as amicus-curiae on this appeal in support of the order appealed.
The original* order entered against appellant found him guilty of charges two and! *249 ■three of the complaint, and suspended his license as agent for a period of one year. On appeal to this court the order of suspension was reversed for the reason that it failed to contain specific findings of fact on which the judgment of conviction was predicated as required by the statute. The -cause was remanded with directions that an appropriate order be entered in accordance with the opinion.[1] In compliance with the court’s mandate an amended order was ■entered which forms the subject of this ■appeal. The order contains specific findings of fact by the Commissioner and finds appellant guilty of the violations alleged as charges two and three of the complaint. Charge two alleges that appellant violated those sections of the insurance code relating to misrepresentations or misleading statements as to the terms of policies issued or to be issued, and as to the financial condition of an insurer.[2] Charge three alleges that appellant violated those sections of the insurance code relating to misleading statements and incomplete comparisons maliciously derogatory to the -financial condition of an insurer.[3]
The statute under which this proceeding was instituted requires that any order entered by the Commissioner shall contain ■findings of fact based upon a preponderance of the evidence.[4] With respect to appellate review of such orders the statute provides that all findings of fact, final rulings, orders or decisions of the Commissioner shall be subject to review by appeal to the District Court of Appeal, First District, which court shall affirm, reverse •or modify the Commissioner’s ruling, order ■or decision appealed from.[5]
In this case the order appealed was entered by the Commissioner upon his review of the typewritten record of the proceedings had before the trial examiner. He did not have the advantage of observing the witnesses who testified, their demeanor on the witness stand, or any of the advantages enjoyed by the trier of facts who personally participates in the trial. Although under these circumstances the Commissioner’s findings and conclusions are nevertheless entitled to great weight, he was in no better position than is this court to make a determination as to the preponderance and probative weight of the evidence based solely upon the typewritten record.
On the first appearance of this case in this court we held:
“For the statement to constitute a misrepresentation within the contemplation of law, the misrepresentation must have related to one or more of the material facts specified in the insurance code; must have been found to be false, and known by appellant to be false, or made carelessly without knowledge of the facts represented; and was made with the intent that it be acted upon by Dr. Weinkle. The same factors would have to be established by the evidence and found by the commissioner with respect to alleged misleading statements made by appellant. The order of suspension contains no findings of fact from which the legal conclusion could be drawn that the statement prepared by appellant constituted a misrepresentation, or was misleading as a matter of law. The same general observations are applicable to the purported findings with respect to charge III quoted above.”
Such pronouncement became the law of the case and was intended as a guide to the Commissioner in the entry of the amended order which forms the subject of this review.
*250 It would unduly burden and prolong this opinion by reciting in detail the facts established by the .record. It is sufficient to say that we have examined and carefully considered all of the evidence on which the Commissioner relies to support the findings upon which his conclusion is based. It is undisputed that all of the statistical data contained in the questioned memorandum prepared by appellant was taken directly from authoritative insurance manuals and bulletins, the correctness of which is not questioned. The principal criticism of the memorandum is that appellant should not have relied entirely on the information and other statistical information contained in his source material, but should have procured from other available sources different figures and other informa-ion which, if utilized, would have changed the result of his analysis and comparison of the policies issued by Northwestern and Fidelity. By taking out of context some of the statements appearing in the memorandum and attributing to them a meaning which does violence to the clear intent of the document as a whole, the Commissioner has inferred that such statements were misleading and constitute misrepresentations condemned by the statute. Other statements appearing in the memorandum which the Commissioner found to have been misleading and maliciously derogatory of Fidelity’s financial condition can be construed as nothing more than sales talk by an agent endeavoring to place his product in a most favorable light. All facts contained in the memorandum regarding the financial condition of Northwestern and Fidelity were accurate, and so testified to by Fidelity’s own actuary. That these facts reflected the superior financial condition of Northwestern does not per se make their inclusion in the memorandum maliciously derogatory of Fidelity’s financial condition. We fail to find from this record a preponderance of evidence which may be said to establish the ultimate facts as found by the Commissioner. Conceding for the purpose of discussion that some isolated statements in the memorandum were technically incorrect and by inference or innuendo were derogatory to Fidelity’s financial condition, we find no evidence to support the view that such were knowingly false or maliciously made.
The sections of the insurance code specifying the offenses of which appellant stands convicted are contained in Chapter 626, F.S.A., entitled Trade Practices and Fraud. The .recited purpose of the Act is to regulate trade practices in the business of insurance in accordance with the intent of Congress relating to unfair methods of competition or unfair or deceptive acts or practices. The statute was enacted pursuant to the police power of the state, and has as its ultimate objective the protection of the public as well as the protection of insurers engaged in this particular type of business. We must consider the evidence before us as a whole for the purpose of determining whether the questioned memorandum prepared by appellant constitutes an evil sought to be prevented by the statute.
It can hardly be said that the memorandum prepared by appellant, and furnished only to Dr. Weinkle and Fidelity’s local agent, constituted an unfair method of competition or a deceptive trade practice. Fiad such been appellant’s intention, he would no doubt have refrained from delivering a copy to Mogul. It should be remembered that this memorandum was prepared months after Weinkle had purchased the Northwestern policies and had permitted the Fidelity policies to lapse. It therefore cannot be said to have been intended as an inducement to Dr. Weinkle to make a judgment previously formed and effectuated. The memorandum was furnished to Mogul with the expectation that he would prepare a like document containing a comparative analysis, together with his comments and opinions, couched in terms most favorable to the company he represented. The memorandum was furnished with full knowledge that if it contained any inaccurate information or statements which might be misleading or untrue, Mogul would most *251 certainly point out such inaccuracies and refute any false statements or innuendoes which may be contained therein. We cannot conceive of any manner in which appellant could have conducted himself in this transaction which would have been any more fair either to Mogul or Fidelity.
 In the alternative can it be said that the action taken by appellant was injurious to the best interest of Dr. Weinkle? The latter was a mature professional man holding three college degrees, and was experienced in the field of business and investments. His testimony clearly establishes that he relied entirely on the information gained by him from Best’s and other authoritative documents in reaching his decision to purchase the Northwestern policies, and not upon the memorandum subsequently furnished him by appellant. After this dispute arose and Dr. Weinkle was fully apprised of all of the pertinent facts connected with the transaction, appellant offered to cancel the Northwestern policies if Weinkle so desired. The latter declined stating that he was perfectly satisfied with his decision and did not want the Northwestern policies cancelled. Thus we find that the member of the public for whom the statute is intended to afford protection has no complaint of any act on appellant’s part in connection with his purchase of the life insurance policies. He was not misled nor did he place any particular importance on those phases of the memorandum which the Commissioner found to be deceptive, misleading, maliciously derogatory or unfair. It appears to us to be affirmatively established by the record that even though a more experienced agent may have prepared a different type of memorandum containing comparisons more favorable to Fidelity than the one prepared by appellant, it cannot be said from the evidence in this record that appellant’s actions constituted an unfair trade practice or an unfair method of competition in the insurance business. The average licensed insurance agent cannot be held to the same high standard of skill and ability in the normal conduct of his business as is possessed by the experienced actuary on whose testimony the Commissioner relied to establish the violations of which appellant has been found guilty. It is our conclusion that the Commissioner gave undue weight to unjustified inferences and innu-endoes drawn from the undisputed facts in this case, and arrived at conclusions which are not warranted by the record. It is for these reasons we hold that he misinterpreted the legal effect of the evidence and applied to the facts erroneous principles of law in concluding that appellant was guilty of the charges against him. The order appealed is accordingly reversed with directions that the complaint be dismissed and appellant discharged.
CARROLL, DONALD K., C. J., and RAWLS, J., concur.

. Collignon v. Larson, (Fla.App.1961), 132 So.2d 317.

. F.S. §§ 626.0601, 626.0602, 626.0604, F.S.A.

. F.S. §§ 626.0601, 626.0602, 626.0604, 626.0607, F.S.A.

. § 624.0126(2), F.S.A.

. F.S. § 624.0128, F.S.A.