174 N.J. Super. 337 (1979)
416 A.2d 908
ADA FINANCIAL SERVICE CORP. ET AL., PLAINTIFFS-RESPONDENTS,
v.
STATE OF NEW JERSEY AND JAMES J. SHEERAN, COMMISSIONER OF DEPARTMENT OF INSURANCE, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued March 27, 1979.
Decided August 8, 1979.
*341 Ms. Maureen McGrath, Deputy Attorney General, argued the cause for appellants (Mr. John J. Degnan, Attorney General, attorney; Ms. Erminie L. Conley, Deputy Attorney General, of counsel).
Mr. Gerold Kanengiser argued the cause for respondents ADA Financial Service Corp. et al., Approved Insurance Agency, Inc., John Costa, Anthony C. Damore et al., F.T.P., Inc., et al., Victor M. Gardella et al., Richard W. Griffiths, Herbert Grossman, Alan Lazaroff and Breuche Agency, Jack Newbauer et al., Howard C. Newman et al., James T. Shidner et al., and William H. Wehe, t/a Westfield State Agency (Messrs. Gordon & Kanengiser, attorneys; Mr. Joseph Gordon, of counsel).
*342 Mr. Marc. C. Gettis argued the cause for respondent Fred Allen Agency, Inc. (Mr. Lester Weiner & Associates, attorneys).
Mr. Robert J. Cirafesi argued the cause for respondents Berg Associates et al., and Ronald Frigerio et al. (Messrs. Wilentz, Goldman & Spitzer, attorneys).
Mr. Michael A. Spero argued the cause for respondents Mazauskas and City Insurance Services, Inc. (Messrs. McCarthy & Hicks, attorneys; Mr. John P. Sheridan, Jr., of counsel).
Mr. Joseph E. Irenas argued the cause for respondents Management Agency, Inc., et al. (Messrs. McCarter & English, attorneys; Ms. Jane S. Pollack, on brief).
No one appeared for respondent Garden State Insurance Agency or respondent Lomas & Nettleton Insurance Agency.
Before Judges MATTHEWS, KOLE and MILMED.
The opinion of the court was delivered by MATTHEWS, P.J.A.D.
This is an appeal from a judgment of the Law Division declaring the provisions of N.J.S.A. 17:22-6.6a and 17B:22-8(c) unconstitutional as violative of the Equal Protection and Due Process Clauses of the Federal and State Constitutions. The provisions were enacted by L. 1975, c. 364, and became effective on March 3, 1976. N.J.S.A. 17:22-6.6a reads:
No insurance agent's, broker's or solicitor's license shall be issued or renewed to any banking institution or savings and loan association which regularly accepts deposit from New Jersey residents not regularly employed by said lending institutions or its affiliates or bank holding company, finance company, except any finance company affiliated with an insurance company, mortgage loan company, credit union or any other institution whose principal business is the lending of money, nor any parent company, subsidiary, affiliate, service corporation or member bank thereof, except that this section shall not apply with respect to credit life insurance, credit accident and health insurance, group mortgage cancellation life insurance or group mortgage accident and health insurance.
The Commissioner of Insurance is authorized to promulgate regulations to effectuate the purpose of this section, which will assist in maintaining the separation between lending institutions and the insurance business and to minimize the possibilities of unfair competitive practices by lending institutions or their related companies.
*343 Similar language was adopted as part of the Life and Health Insurance Code at N.J.S.A. 17B:22-8(c).
Because the statute prohibited the Commissioner from renewing the insurance license of any agent or broker who was affiliated with a financial institution and because of the difficulty in discerning such an affiliation, questionnaires were prepared and sent with the applications for renewal[1] of property-casualty brokers in New Jersey. Some 18,000 renewal applications and questionnaires were returned to the Department in September and October 1977. After reviewing the information submitted on the questionnaires, the Department notified plaintiffs in the various actions below that their licenses would not be renewed by reason of N.J.S.A. 17:22-6.6a because they are in some way affiliated with a financial institution:
ADA Financial Service Corporation owns three subsidiary corporations, United General Agency of America, Inc., a property-casualty insurance agency, United General Life Agency of America, Inc., a life and health insurance agency, and Millburn Service Plan, Inc., a finance company licensed to do a second mortgage loan business, a sales finance business and an insurance premium finance business;
plaintiff Fred Allen is the president and principal stockholder of the plaintiff Fred Allen Agency, Inc., an insurance broker and agent, and Essex and Union Mortgage Company, a mortgage loan company;
plaintiff Approved Insurance Agency, Inc., an insurance broker, also does business as a premium finance company under the name of AIA Premium Finance; the individual plaintiff Jerry M. Field who is the owner of Approved, also owns a substantial amount of stock of Heritage Finance Service Co., a small loan company, and Brunswick Mortgage Co. and Majestic Finance Discount Co., second mortgage companies;
*344 plaintiff Berg Associates is an insurance broker and is a subsidiary of the plaintiff Berg Enterprises, Inc., which is generally engaged in the business of real estate services; other subsidiaries of the parent corporation include Berg Agency, Inc., engaged in a real estate sales business, and Margaretten & Co. and Blau Mortgage Co., both engaged in a mortgage loan business;
plaintiff City Insurance Services, Inc., is a wholly owned subsidiary of City Federal Savings & Loan Association, a federally chartered savings and loan association;
plaintiff John Costa is an insurance broker and also trades at the same address as Franklin Financing Co., a premium finance company which he operates for the benefit of his insurance business;
plaintiff Anthony C. Damore is an insurance broker and owner of 80% of the stock of the plaintiff A.C. D'Amore Agency, Inc., also a licensed broker; he is also the owner of a substantial portion of the stock of Policy Advancing Corporation, a premium finance company operating for the benefit of the customers of the insurance business;
plaintiffs Ronald and Richard Frigerio, insurance brokers, own all the stock of the Richard Lewis Agency, an insurance brokerage company, and the majority of the stock of Marfico, Inc., a premium finance business;
plaintiff F.T.P., Inc., is an insurance broker and its principal officers are the plaintiffs Frank Powell, Thomas Powell and Patrick Powell, all of whom are insurance brokers; Financial Leisure Finance Co., a premium finance company, is the parent corporation of F.T.P., Inc., and is located at the same address;
plaintiff Victor M. Gardella, an insurance broker, is the owner of the plaintiff DAG Agency, Inc., also an insurance broker; Mr. Gardella is also the owner of Budget-Easy, Inc., an insurance premium finance company;
plaintiff Garden State Insurance Agency, Ltd., is a partnership engaged in the insurance brokerage business; the plaintiff Sol Kugler, an insurance agent and broker, is a partner in *345 Garden State, is also an officer and director of Globe Mortgage Co., a mortgage lending company;
plaintiff Richard W. Griffiths is an insurance broker and also owns a substantial portion of the stock of International Financial Services, Inc., a premium finance company;
plaintiffs Herbert Grossman, Inc. and its owner Herbert Grossman, are insurance brokers; Mr. Grossman is also the owner of Mar-San Finance Co., Inc., a premium finance agency doing business at the same address as the insurance agency;
plaintiff Alan Lazaroff is an insurance broker and the owner of the plaintiff Breuche Agency, Inc., also an insurance broker; Mr. Lazaroff is also the owner of all of the stock of State Financial Corp. and 50% of the stock of Blossom Finance Co. Both of these corporations are insurance premium finance companies;
plaintiff Lomas & Nettleton Insurance Agency, Inc., an insurance agent and broker, is a wholly owned subsidiary of The Lomas & Nettleton Company which is engaged in the business of originating mortgage loans, servicing mortgage loans and reselling mortgage loans; the individual plaintiff Frank B. Smith, also an insurance broker, is an officer of the corporate insurance agency and also a 30% stockholder of the Provident Mortgage Corporation, a mortgage company; all three corporations are located at the same address;
plaintiff Management Agency, Inc., an insurance broker, is a wholly owned subsidiary of Jersey Mortgage Co., which is engaged in mortgage brokering and mortgage servicing; the individual plaintiffs are employees of the corporate insurance agency;
plaintiffs Jack Newbauer and U.S. & Overseas Agencies, Inc., are insurance brokers; Mr. Newbauer also engages in a premium financing business trading as M.I.S. The two companies operate their businesses from the same address;
plaintiff Harold C. Newman, an insurance broker, owns all of the stock of the plaintiff Weiner-Reinfeld Agency, Inc., also an insurance broker; Mr. Newman also owns 50% of the stock of Blossom Finance Co., an insurance premium finance company;
*346 plaintiffs James Shidner, Doris Woodruff, J. Willard; Gardiner and Clark Shidner Agency, Inc., are insurance brokers; the individual plaintiffs are stockholders of Pennsville Premium Finance Co., an insurance premium finance company; both corporations do business at the same location;
plaintiff William Wehe, t/a Westfield State Agency, is an insurance broker; Mr. Wehe, t/a Premium Finance Company, also operates a premium finance company at the same location.
L. 1975, c. 346, prohibits the Commissioner of Insurance from licensing certain financial lending institutions, their parent company, subsidiary or affiliate as an insurance agent, broker or solicitor. As evident in N.J.S.A. 17:22-6.6a and 17B:22-8(c), the Legislature, in enacting the law, specifically intended (1) to maintain the separation between lending institutions and the insurance business, and (2) to minimize the possibilities of unfair competitive practices by lending institutions or their related companies. The Legislature recognized the grave potential for abuse of a lending institution's power over a borrower which could lead to coercion of the borrower in the placement of insurance on the property which is the subject matter of the loan. For example, the approval of a mortgage application might be premised on an expensive homeowner's policy or an automobile loan might be approved only if the applicant obtains insurance through a broker or agent who is affiliated with the financial institution. The converse of this is also applicable in that insurance agents and brokers have been known to steer their insureds to a premium finance company in which they have an interest rather than informing their insureds that certain insurance carriers offer deferred payment plans.
This legislative purpose was found by the trial judge to be a reasonable, indeed important, legislative objective. Nevertheless, the trial judge determined that it was not substantial enough to support the statute.
While the authority of the Legislature in enacting laws must be exercised in conformity with the Due Process and Equal Protection Clauses of the State and Federal Constitutions, the *347 power of judicial review is generally a limited one. The court may only determine whether the legislation is reasonable. Thus, if any state of facts may be reasonably conceived to justify the legislation, the court must sustain it. McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). The court may not substitute its own policy judgment for that of the Legislature.
We agree with Judge Schoch in his conclusion that the legislation challenged here is constitutionally invalid because of the absence of a logical basis for the exclusions made by the Legislature in the body of the statute. One exclusion enables lending institutions engaged in the business of providing credit life insurance, credit accident and health insurance, group mortgage cancellation life insurance and group mortgage accident and health insurance to apply for and renew requisite insurance agent, broker or solicitor licenses. Lending institutions engaged in the business of providing any other type of insurance, whether directly or through an affiliate, are expressly denied the privilege of being issued or renewing any insurance agent, broker or solicitor licenses. A second exemption provides that finance companies affiliated with insurance companies are not subjected to the statutory prohibition, and are free to obtain and renew licenses to engage in all types of insurance business. All finance companies not affiliated with insurance companies are prohibited from engaging in the insurance business, both directly and through affiliates.
The essence of the Equal Protection Clause under the Fourteenth Amendment of the Federal Constitution, as well as the sometimes even more demanding equal protection guarantees implied in our State Constitution, is that persons situated alike shall be treated alike. Both the state and federal guarantees seek to insure equality of right by forbidding arbitrary discrimination between persons similarly situated. Robinson v. Cahill, 62 N.J. 473 (1973), cert. den. 414 U.S. 976, 94 S.Ct. 292, 38 L.Ed.2d 219 (1973), Schmidt v. Newark Bd. of Adj., 9 N.J. 405 (1952). These equal protection guarantees do not require the State to treat all persons identically. Shepard v. Woodland Tp. *348 Comm. and Planning Bd., 71 N.J. 230 (1976). It is, of course, recognized that the Legislature has some leeway in making classification, that mathematical precision is not required, and that policy decisions as to the need for and wisdom of the legislation are properly left to that body and not to the courts. However, equal protection does mandate that differences in treatment not be arbitrary or invidious; that those distinctions which are made be justified by an appropriate state interest, and that they bear a real and substantial relationship to furthering governmental ends.
In equal protection analysis, "courts must reach and determine the question whether the classifications drawn in a statute are reasonable in light of its purpose." McLaughlin v. Florida, 379 U.S. 184, 191, 85 S.Ct. 283, 288, 13 L.Ed.2d 222 (1964). In determining whether a classification is reasonably related to the basic objective of the legislation or to some relevant consideration of public policy, we must consider the facts and circumstances behind the law, the interests which the State claims to be protecting, and the interests of those who are disadvantaged by the classification. This determination as to the reasonableness of the classification must be made even when no suspect classifications have been drawn and no fundamental interests have been infringed. See, for example, Group Health Ins. of N.J. v. Howell, 43 N.J. 104 (1964).
A statutory classification is constitutionally objectionable where it is either under or overinclusive, and either event will serve to void the statute on equal protection grounds. Rinaldi v. Yeager, 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966).
The inequality resulting from an underinclusive classification in a regulatory enactment resides in the burdening of some persons in a manner that furthers a public purpose, while others who are similarly situated are not subjected to that same burden. As was stated in Washington National Ins. Co. v. Board of Review, 1 N.J. 545 (1949):

*349 * * * The equal protection of the laws means that no person or class of persons shall be denied the protection of the laws enjoyed by other persons or classes of persons under similar conditions and circumstances, in their lives, liberty, and property, and in the pursuit of happiness, both as respects privileges conferred and burdens imposed. * * * [at 553]
Judge Schoch correctly concluded that the Legislature, without rational justification, chose to exempt some persons from a classification to which they logically and fairly belong. Such statutory underinclusiveness was appropriately found to be so arbitrary as to deny equal protection.
The State proffers several theories to explain the Legislature's purpose in exempting certain types of insurance and certain types of insurance business/lending institution relationships from the scope of the statutory prohibition. Judge Schoch considered and rejected each suggested legislative purpose, finding therein no reasonable basis for the recognition of separate classes, and no rational relationship between the Legislature's disparate treatment of the classes and the object sought to be achieved by the legislation.
The State suggests that credit insurance is different from other types of insurance since it is "normal or incidental to the business of lending money" and "intrinsically related to the lending of money." The State argues that the Legislature could rationally conclude that because credit insurance protects the investment of a lending institution, that lending institution must be allowed to obtain or place credit insurance for consumers through affiliated insurance agencies.
We find no rational distinction between the situation where a lending institution seeking to protect its investment places credit insurance for its consumers through an affiliate insurance agency, and where a lending institution seeking the payment of premiums from its consumers places other types of insurance through an affiliate insurance agency. In each instance the incentive on the part of the lending institution in placing insurance through its affiliate is economic. If anything, the potential for coercion of a consumer by a lending institution in may be greater with respect to credit insurance than for other forms of insurance. Not only does the lending institution stand *350 to gain protection for its investment; it also benefits by referring a customer to its affiliate insurance agency where a premium will be extracted to secure the desired investment protection. In short, the relationship between credit insurance and lending institutions urged as a ground for differential treatment by the State is not relevant to the evil addressed by the statute  the anti-competitive practice of "tying in" insurance sales and lending.
The argued justification for the exemption relating to finance companies affiliated with insurance companies also fails to account for the differential treatment worked by the statute. The State suggests that because many insurance companies are part of large holding companies which may include finance companies, the Legislature could reasonably conclude that the relationship between insurance companies and finance companies is necessarily so attenuated that the problem of consumer coercion will not occur. This was characterized as a "bigger is better" theory by Judge Schoch and was rejected as the purported rational basis for sustaining that exemption.
The State's position that insurance companies in the money lending business present a lower risk for coercion than those types of association between lending institutions and their affiliated insurance agents or brokers is simply not supported by the record.
The second basis alleged by the State to support the exemption is the fact that many insurance companies engage in premium financing activities, and that some of these insurance companies choose to do this financing through subsidiary or affiliated finance companies. Certainly such a situation is fraught with the same potential for consumer coercion that the Legislature perceived in other areas where lending institutions were connected with the insurance business. A consumer applying for insurance will be conveniently (and perhaps coercively) steered by the company to its affiliated insurance premium finance company. The finance charge for this service plus the desire to make the purchase of insurance economically feasible is *351 ample incentive for the insurance company to act in such a fashion. Despite this danger, the State suggests that the exception was designed to "allow the insurance companies to continue this aspect of their business for the benefit of the policyholders."
The State's position, plainly put, is that in the name of customer convenience, the danger of coercive practices is to be endured. There is nothing to show that the insurance company customers' needs would not be adequately met by the many licensed insurance premium financing companies operating in the State. N.J.S.A. 17:16D-1 et seq. Under the circumstances, it is difficult to see how the insurance company customer would be seriously disadvantaged by including within the prohibition against writing insurance finance companies affiliated with insurance companies.
In view of our conclusions herein, we deem it unnecessary to deal with Judge Schoch's second finding that "this statute is violative of * * * the due process clauses of the Fourteenth Amendment to the United States Constitution and to the New Jersey Constitution."
Affirmed.
NOTES
[1] All insurance licenses are renewed for two year terms which is why the brokers' licenses were in effect since the adoption of N.J.S.A. 17:22-6.6a and 17B:22-8(c).