587 So.2d 534 (1991)
GLENDALE FEDERAL SAVINGS AND LOAN ASSOCIATION; Community Federal Savings and Loan Association of the Palm Beaches; Naples Federal Savings and Loan Association; Wilshire Glen Services, Inc., d/b/a Jewel City Insurance Agency, a California Corporation registered to do business in the State of Florida; Comfed, Inc., d/b/a Community Insurance Agency, a Florida corporation, and John O'Conner, Appellants,
v.
STATE of Florida, DEPARTMENT OF INSURANCE, a state agency, and the Honorable Bill Gunter, as Insurance Commissioner and Treasurer of the State of Florida, et al., Appellees.
No. 88-2266.
District Court of Appeal of Florida, First District.
September 30, 1991.
Rehearing Denied November 4, 1991.
*535 Marguerite H. Davis and Edward L. Kutter of Katz, Kutter, Haigler, Alderman, Eaton & Davis, P.A., and Keith C. Tischler and Jack M. Skelding, Jr., of Parker, Skelding, McVoy & Labasky, Tallahassee, for appellants.
Robert A. Butterworth, Atty. Gen., Eric J. Taylor, Asst. Atty. Gen., and Lisa S. Santucci, Asst. Gen. Counsel, Dept. of Ins., Tallahassee, for appellees Florida Dept. of Ins. and Ins. Com'r Bill Gunter.
DuBose Ausley, Kenneth R. Hart, and Steven P. Seymoe of Ausley, McMullen, McGehee, Carothers & Proctor, Tallahassee, for appellee Florida Ass'n of Ins. Agents.
J. Robert McClure, Jr., of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tallahassee, for amicus curiae Florida Ass'n of Life Underwriters.
John J. Gill, General Counsel, Michael F. Crotty, Associate General Counsel, and Irving D. Warden, Asst. Counsel, Washington, D.C., for amicus curiae American Bankers Ass'n.
J. Thomas Cardwell and Virginia B. Townes of Akerman, Senterfitt & Eidson, Orlando, for amicus curiae Florida Bankers Ass'n.
PER CURIAM.
This is an appeal of an August 11, 1988 final summary judgment, granting defendants/appellees' motion addressed to appellants' complaint for declaratory relief and denying appellants' motion for such relief. Appellants contend here (1) that the restrictions on insurance agents contained in § 626.988, F.S. (1983), are so vague and ambiguous as to render the statute incapable of proper construction; that it is unconstitutionally violative of equal protection *536 and due process, and constitutes an unlawful delegation of legislative authority to the state Department of Insurance; and that the matter regulated is preempted by federal law. We affirm, finding appellants have not carried their burden of demonstrating from the record here the existence of material disputed facts precluding the trial court's disposition.[1]
Because the vagueness challenge deals with economic regulation, we are constrained *537 to use greater latitude in applying a vagueness test because the affected parties are comparatively sophisticated and are clearly intended to seek administrative guidance. Village of Hoffman Estate v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). See also Department of Legal Affairs v. Rogers, 329 So.2d 257, 264 (Fla. 1976). Most of the language questioned can be interpreted according to common understanding and reason, and several terms, such as "financial institution," "insurance agency activities," and "financial institution agency," are expressly defined in the statute. The court correctly found that the statute affords fair notice to the parties that they are affected and what is prohibited, and also affords sufficient guidance to the agency charged with enforcing it.
As to appellant's equal protection and due process arguments, this court previously reversed and remanded an order of dismissal for the expressed purpose of giving appellants a chance to build a record as to alleged discrimination without rational basis in the terms of the act, and "[m]ore importantly ... to show [as alleged] that so many financial institutions and their agents are currently being permitted to sell insurance under the grandfather exceptions ... that the entire statute has been rendered ineffectual." Glendale Federal Savings & Loan Association v. State of Florida, Department of Insurance, 485 So.2d 1321, 1325 (Fla. 1st DCA 1986). From our reading of the briefs and those portions of the record which are undisputed in any significant respect, we conclude that appellants made no showing sufficient to require the trial court's exercise of any functions beyond the proper scope of the motions for summary judgment, and that the order entered is facially and substantively adequate.
The challenged classifications are (1) financial institutions located in towns with a population of less than 5,000; (2) certain financial institutions exempted from the statute; (3) financial institutions "grandfathered" at the time the statute was enacted; and (4) an exemption allowing financial institutions to sell credit insurance. The population exemption may be related to lack of availability of insurance in smaller towns, the traditional overlapping of functions in their businesses, and the need for additional sources of income for survival of banks in that market. Certain financial institutions are exempt on the apparent theory that they cannot effectively exercise influence or control over a bank or savings and loan association. This exemption prevents the statute's application to institutions that are less likely to indulge in the "evils" of coercion, unfair trade practices, and undue concentration of resources.
The "grandfather" exemption protects vested rights, and cannot here be said to be so lacking in rationality that it constitutes an impermissible denial of equal protection. See City of New Orleans v. Dukes, 427 U.S. 297, 305, 96 S.Ct. 2513, 2517-18, 49 L.Ed.2d 511 (1976). Finally, the exemption that allows financial institutions to sell credit insurance is rationally related to the legitimate goal of protecting the proper business interests of those institutions and their loans. Because each classification appears to bear some reasonable relationship to a legitimate state purpose, we conclude that the trial court correctly found no violation of equal protection. And the cited rational bases of prevention of coercion, unfair trade practices, and undue concentration of resources, in light of evidence in the form of affidavits and deposition testimony of expert witnesses, support the conclusions that the legislature could properly decide to act as it did, and that the statute accordingly does not violate due process.
Appellants contend that 12 U.S.C. § 1461, et seq., which governs the manner in which a federal savings and loan association may do business, has preempted § 626.988 as it pertains to savings and loan associations. The Third Circuit recently dismissed this same argument in Ford Motor Co. v. Insurance Commissioner of the Commonwealth of Pennsylvania, 874 F.2d 926 (3d Cir.1989), cert. denied, sub nom. USAA v. Foster, 493 U.S. 969, 110 S.Ct. 418, 107 L.Ed.2d 382 (1989), in determining that Pennsylvania's statute, which *538 precludes companies that sell insurance in Pennsylvania from affiliation with savings and loan institutions, was not preempted by federal legislation. That court stated, and we agree:
We are unpersuaded, however, as were the district courts, that Congress intended to preempt entirely the states' authority to impose regulations upon savings and loan institutions that operate within the state's borders, or, as in the present case, to impose regulations upon other financial institutions that seek affiliations with savings and loans.
Affirmed.
ERVIN, J., and WENTWORTH, Senior Judge, concur.
ZEHMER, J., concurs in part and dissents in part with opinion.
ZEHMER, Judge (dissenting).
I concur in affirming the summary judgment for appellees on the issue of the statute's unconstitutional vagueness and the issue of federal preemption. For the following reasons, however, I respectfully dissent from the affirmance of the issues of equal protection and due process, and I would reverse and remand for an evidentiary trial on those issues.
Appellants contend that section 626.988 violates the equal protection clauses of the federal and state constitutions because there is no rational relationship between the statute's stated purpose and the classifications, or class delineations, created in that section. Appellants characterize the statutory purpose as "preventing the dangers of permitting the designated financial institutions to provide both financial services and insurance," and argue, "The obvious facial flaw of section 626.988 is that there are no practical differences between the members of the class and those exempted from the regulated class." I shall first set forth a summary of the arguments of appellants and appellees on the four challenged classifications described in the majority opinion, and then discuss why this issue should not have been disposed of on summary judgment.
First, appellants contend that providing an exception for banks in a city having a population not in excess of 5,000 is purely arbitrary and unrelated to the statutory purpose. They argue that the size of a municipality in which the bank is located has no effect upon the ability of an employee of the bank to engage in unfair practices and that "a bank serving a smaller population would be in a less competitive market, and would therefore have greater ability to engage in coercive conduct." In reply, appellees point out that the scope of this exemption is the same as that passed by Congress in its 1916 amendment to the 1864 National Banking Act, codified as 12 U.S.C. § 92. This exemption specifically authorizes such banks to "act as agent for any fire, life or other insurance company authorized by the authorities of the State in which such bank is located to do business in said state, by soliciting and selling insurance and collecting premiums on policies issued by such company." The exemption is said to be based on such banks' need for additional income, the lack of available sources of insurance in such small cities, and the traditional overlapping of such functions in small towns. Not only is the purpose of the federal exemption consistent with the purpose of the Florida exemption, appellees argue, federal preemption would preclude the application of the Florida statutory prohibition to federally chartered banks falling in this category. Finally, appellees say, there is no rational reason why Florida should treat state chartered banks any differently than federally chartered banks in respect to this exemption.
Second, appellants contend that the failure to include within the purview of section 626.988 all financial institutions similarly situated and the exemption from the statute of certain financial institutions that would otherwise be covered violate the equal protection clause. They point to the specific exemptions of certain banks and savings and loan associations in section 626.988(1)(a) defining "financial institution" and the failure to include within the coverage of the statute financial organizations *539 that are virtually indistinguishable in the nature of their business operations from banks and savings and loan associations, such as credit unions and industrial savings banks licensed under chapter 664, Florida Statutes, as each may serve as both a depository and as a lender to its customers. Thus, appellants argue:
That there are distinctions between the institutions is not the issue. All are similarly situated to pose an identical threat of an identical magnitude to that purported to be addressed by the statute.
It is not a justification of this failure to similarly regulate those similarly situated that these institutions are governed by different regulatory schemes. The fact that categories of financial institutions exist  and that each category may have a slightly different economic role or utility  does not vitiate the requirement that regulatory discrimination among the categories bear a rational relationship to the regulation's purpose. Where the inherent danger sought to be prevented is the same in each category and the method of preventing would be the same in each category, there is no rational basis for including one category within the statute's ambit and excluding others. To justify such treatment, the proponents of the statute must show that the categories differ specifically as to the manner in which each poses a threat to this unfair trade practice.
Replying, appellees contend that the exemption of financial institutions having no more than 10 percent of capital stock and not exercising control of a bank or savings and loan institution "is designed to prevent the statute from covering every institution regardless of the amount of control an institution wields or the state in which the financial institution is located" and is thus a rational classification. As to those financial institutions not included under the statute, such as credit unions and industrial savings banks, appellees argue:
Appellants have failed to present evidence that such institutions are engaging in such activities or that such institutions have created any problems with regards to the dangers the statute is designed to prohibit. Moreover, there are substantial differences in the types of financial institutions, their impact on the market place, and their impact on commerce. .. .
Third, appellants focus specifically on the grandfather clause in section 626.988(5), which permits financial institutions and their agencies in existence on April 2, 1974, to continue in operation and to have successor agents licensed by the Department. They also point to the grandfather clause for agents in section 626.988(7). This grandfather clause, appellants argue, "permits the perpetual operation of financial institution agencies, based upon an arbitrary date that appears to have no relation to whether those agencies or agents are likely to engage in unfair trade practices, but appears to be related only to the date of the enactment of the statute." Countering the trial court's finding that the effect of the grandfather provision is de minimis, appellees point to deposition testimony of the witness Mazzeo, an attorney for the Department, that there could be as many as 100,000 grandfathered agents or financial institutions so far as he knows. If the purpose of the statute is to prevent coercion or other unfair trade practices by insurance agents affiliated with financial institutions, they argue, it makes no sense to absolutely prohibit one portion of the industry from entering upon such activity while allowing those already engaged in such activities to continue to do so in perpetuity; if the past experience with such institutions and agencies is such that they should be allowed to continue, it is unreasonable and irrational to assume that those who have never before engaged in such activity will practice unfair trade practices. Finally, appellants argue, the purpose of grandfather clauses ordinarily is to excuse professionals who have demonstrated their competence by past experience from having to acquire licenses, citing Watson v. Maryland, 218 U.S. 173, 177, 30 S.Ct. 644, 646, 54 L.Ed. 987 (1910); Midstate Hauling Co. v. Mason, 177 So.2d 206 (Fla. 1965); Eslin v. Collins, 108 So.2d 889 (Fla. 1959), and the grandfather clause in section 626.988 does not serve such a purpose. The grandfather *540 clause unreasonably exempts a portion of an industry from regulation where the potential for abuse does not vary between the regulated portion and the non-regulated portion, appellants continue, and thus creates arbitrary and unreasonably discriminatory classifications that bear no reasonable relationship to the object sought by the legislature, citing Shevin v. International Inventors, Inc., 353 So.2d 89 (Fla. 1977).
Appellees answer this argument, contending that this grandfather clause protects vested interests of those already engaged in the insurance activity, and is constitutional under the Supreme Court's decision in City of New Orleans v. Dukes, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976). They refer to testimony that fewer than 10 institutions are known to be grandfathered under this provision, and cite witness Mazzeo's affidavit that he knows of only four financial institutions and agencies currently recognized by the Department under the grandfather clause, as well as answers to interrogatories that only a few institutions are involved. Hence, they conclude, the trial court was correct in characterizing the effect of this clause as de minimis.
Fourth, appellants focus upon the provision in section 626.988(3), which permits regulated agencies to sell credit life, credit disability, and mortgage life insurance, as a further indication of the arbitrary and unreasonable classification scheme in violation of equal protection. They rely heavily upon the decision in ADA Financial Service Corp. v. New Jersey, 174 N.J. Super. 337, 416 A.2d 908 (App.Div. 1979), which held that a similar provision in a New Jersey statute denied equal protection because the "relationship between credit insurance and lending institutions urged as a ground for differential treatment by the state is not relevant to the evil addressed by the statute  the anti-competitive practice of `tying in' insurance sales and lending." 416 A.2d at 915. Appellees respond that the New Jersey court's decision in ADA Financial Services is invalid because the court ignored certain basic constitutional principles. Further, they argue, the exception for credit insurance is directly related to the protection of financial institutions and their loans, and thus is a special type of insurance that is different from other types of insurance. For legal support of the credit insurance exception, they rely on the principles set out in Willamson v. Lee Optical of Oklahoma, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955), and the federal district court ruling in Ford Motor Co. v. Insurance Comm'n, 672 F. Supp. 841 (E.D.Pa. 1987), which refused to follow the holding in ADA Financial Services. They conclude that, "The record shows that the statute is accomplishing its avowed purpose and that the number of institutions operating under the exemptions [is] negligible."
I agree that the trial court correctly denied appellants' motion for summary judgment on this equal protection issue because the facts material to its resolution are not undisputed. For the same reason, however, I conclude that the trial court erred in disposing of this issue on summary judgment. Both sides agree that the statutorily created classifications must bear some reasonable relationship to a legitimate state purpose. E.g., Pinillos v. Cedars of Lebanon Hospital Corp., 403 So.2d 365, 367 (Fla. 1981); Sasso v. Ram Property Management, 431 So.2d 204, 220 (Fla. 1st DCA 1983), aff'd, 452 So.2d 932 (Fla. 1984), appeal dismissed, 469 U.S. 1030, 105 S.Ct. 498, 83 L.Ed.2d 391 (1984). Before the trial court, appellees had the burden of demonstrating the absence of any genuine issue of material fact to support their position. E.g., Holl v. Talcott, 191 So.2d 40 (Fla. 1966). On review of a summary judgment, the appellate court must view the evidence in the record in the light most favorable to appellants, with every inference drawn in appellants' favor. E.g., Wills v. Sears, Roebuck & Co., 351 So.2d 29 (Fla. 1977). As I understand the arguments of appellants and appellees, it is apparent that each side is basing its arguments on conflicting interpretations of the evidence, which plainly demonstrates that the trial court necessarily resolved disputed issues of fact in order to decide that the statute did not violate the equal protection clauses of the *541 state and federal constitutions. Accepting the trial court's conclusion that the ostensible purposes of prohibiting the sale and servicing of insurance by financial institutions and affiliated agencies or agents, as provided in section 626.988, is to prevent (1) coercion, (2) unfair trade practices, and (3) undue concentration of resources, there is a conflict in the evidence as to whether or to what extent these evils actually exist in the current economic and business environment, and whether the statutory classifications are reasonable and rationally supported by the evidence.
In respect to the argument that financial institutions whose business is virtually indistinguishable from banks and savings and loans were arbitrarily excluded from the statute's coverage, the record fails to demonstrate that there is no disputed issue of fact as to whether the nature of the business of credit unions, industrial savings banks, and other such financial institutions is sufficiently different from banks and savings and loans to provide a rational basis for exempting them from the prohibitions of the statute. The evidence does not conclusively establish that such institutions are not engaged in the insurance business, or that they have no impact on the market place. In short, this record does not establish as a matter of undisputed fact that the nature of the business of excluded institutions engaged in accepting deposits and lending money is sufficiently different as to the manner in which each poses a threat to this unfair trade practice.
With regard to appellants' argument based on the grandfather clause provisions, whether the number of exempted agents, as distinguished from financial institutions or agencies, is substantial or de minimis is in dispute. Appellees have not shown the extent or amount of insurance sales involved, or the impact on the consumer market dealing with grandfathered banks and savings and loans, and thus have not demonstrated as a matter of undisputed fact that only institutions and agents newly entering this market provide a substantial risk of injury to the public not likewise shared by existing institutions already engaged in that business. The evidence is also in dispute as to whether the evils sought to be prevented by the statute actually exist, or whether it presents no unreasonable risk of harm to the consuming public to permit all those so engaged when the statute was passed to continue doing so while excluding only new entrants to the field.
Also remaining are disputed issues of fact regarding the rational basis for permitting the defined financial institutions to engage in the credit insurance business while prohibiting them from engaging in any other insurance business. The record does not show without dispute that the evils sought to be prevented by the statute in question do not exist with respect to credit insurance while they do exist with respect to other lines of insurance.
As to appellants' third point, that section 626.988 constitutes a denial of liberty or property without due process of law because it has no rational basis, this argument is premised on asserted state and federal constitutional principles guaranteeing "freedom to engage in a profession or occupation free from unreasonable governmental regulation or interference" and "the right to engage another individual to perform such occupation." Appellants quote the applicable standard from Lasky v. State Farm Insurance Co., 296 So.2d 9 (Fla. 1974):
[T]he test to be used in determining whether an act is violative of the due process clause is whether the statute bears a reasonable relation to a permissible legislative objective and is not discriminatory, arbitrary or oppressive.
296 So.2d at 15. Much of the argument on the lack of a rational relationship between the statutory prohibition and the evils to be avoided is similar to that urged under the equal protection point. Appellees respond with lengthy arguments based on cases upholding the state's exercise of police power to regulate the sale of insurance by entities engaged in certain types of industries.
On the record before us, disputed issues of fact remain as to whether the evils *542 sought to be prohibited currently exist, and it was necessary for the trial court to make a finding of fact on these issues to enter the summary final judgment.[1] Appellants filed the deposition testimony of two expert witnesses who testified that the evils sought to be prevented by statute no longer exist, citing data to support their conclusions. Appellees filed an affidavit of an expert who reached the opposite conclusion. The trial court was thus required to make a finding of fact as to which of the experts to believe. To make this determination on summary judgment was error, requiring reversal and remand for trial.
Appellees attempt to avoid this problem, however, by arguing that appellants had the burden to present competent evidence that established, or could have established, that no set of facts exists or could exist to warrant protection of the public from coercion, unfair trade practices, or undue concentration of economic resources resulting from the sale of insurance by financial institutions. Thus, they continue, "the presentation of facts opposed to those relied on by the legislature does not mean that material facts are in dispute and the trial court's decision must be reversed; rather it establishes that people disagree regarding the facts." As appellees view it, to obtain summary judgment they only had to demonstrate two different viewpoints on the factual issues, since the legislature was free to adopt either view as the predicate for the legislation. This argument is legally deficient, however, in at least one significant aspect. To determine that two valid, bona fide views on the subject were the basis for the legislative action, it was necessary for the trial court to accept both views as credible, and that determination is part of the court's fact-finding function that cannot properly be done in ruling on a motion for summary judgment.
For these reasons, I respectfully dissent from affirming the appealed judgment.
NOTES
[1] SUMMARY JUDGMENT This is an action challenging the facial constitutionality of § 626.988, Florida Statutes... . alleging the statute violates various provisions of the constitutions of both the United States and the State of Florida. Both Plaintiffs and Defendants have filed motions for summary judgment, stating that no disputed issue of material fact exists.
* * * * * *
This Court originally dismissed this action on authority of Production Credit Associations v. Dept. of Insurance, 356 So.2d 31 (Fla. 1st DCA 1978). The First District Court of Appeals [sic] reversed and remanded, holding that Production Credit did not rule on the constitutionality of § 626.988. Glendale Federal Savings and Loan Assn. v. Dept. of Ins., 485 So.2d 1321 (Fla. 1st DCA 1986), rev. denied, 494 So.2d 1150 (Fla. 1986).
Subsequent to the First District's remand, the parties have developed a factual record through the filing of memoranda and through extensive discovery, including the taking of depositions, requests for admissions, production of documents, and interrogatories.
* * * * * *
Because the statute concerns the regulation of insurance, it is a matter within the state's exercise of police power and large discretion is vested in the legislature. See, Feller v. Equitable Life Assur. Soc., 57 So.2d 581 (Fla. 1952); Collingnon v. Larson, 145 So.2d 246 (Fla. 1st DCA 1962). The legislation will be presumed constitutional ...
... if any state of facts, known or to be assumed, justifies the law, the court's power of inquiry ends; questions as to the wisdom, need, or appropriateness are for the legislature.
Fulford v. Graham, 418 So.2d 1204, 05 [1205] (Fla. 1st DCA 1982). Accordingly, only if no rational basis exists for the statute may it be declared unconstitutional. Based on the evidence now in the record, it is clear that the legislative decision in enacting § 626.988 meets this constitutional standard.
* * * * * *
The United States Supreme Court has held that unless a classification ... is drawn upon inherently suspect classifications, a court should defer to legislative determinations as to the desirability of particular statutory discriminations. City of New Orleans v. Duke, 427 U.S. 297 [96 S.Ct. 2513, 49 L.Ed.2d 511] (1976). Distinctions may be made with substantially less than mathematical exactitude and legislatures may implement their programs step by step, adopting regulations that only partially ameliorate a perceived evil and deferring complete elimination of the evil to future regulations. Id.
Plaintiffs complain of four classifications created by § 626.988, Florida Statutes: a) those financial institutions located in towns less than 5,000; b) other types of financial institutions not included in the statute; c) those financial institutions "grandfathered" at the time of passage; and d) that exemption which allows financial institutions to sell credit insurance. Based upon the extensive record developed by the parties, this Court finds that the classifications created by § 626.988, Florida Statutes, are rationally related to legitimate state goals, that of preventing coercion, unfair trade practices, and undue concentration of resources, and that such classifications are sufficiently tailored to achieve those goals.
* * * * * *
In Daniel v. Family Security Life Insurance Co., 336 U.S. 220 [69 S.Ct. 550, 93 L.Ed. 632] (1949), . .. the United States Supreme Court upheld against a due process challenge a statute prohibiting undertakers from selling insurance. The Court found that a legislature might well have concluded that the "likelihood of overreaching on the part of insurance companies, combined with the possibility of monopoly control" required prohibiting undertakers from serving as agents for life insurance companies. Id. at 223 [69 S.Ct. at 552].
Similarly in this case, this Court finds § 626.988 to be rationally related to legitimate state goals. Concerns regarding financial institutions' entry into insurance activities, including the prevention of coercion, unfair trade practices, and undue concentration of resources, existed at the time of passage of the statute and remain valid today. Expert testimony filed with this Court shows that a legislature could well have decided that some protection was required. [e.s.] Therefore, the statute is rationally related to valid and permissible legislative goals, is sufficiently tailored to achieve those goals, and is accordingly constitutional under the due process clauses of both the United States and Florida Constitutions.
* * * * * *
Accordingly, this Court finds and rules, based on the pleadings, depositions, answers to interrogatories and admissions, together with the affidavits on file, that there is no genuine issue as to any material fact and that Defendants are entitled to summary judgment as a matter of law.
[1] When this case was before us previously, Glendale Federal Savings and Loan Ass'n v. State Department of Insurance, 485 So.2d 1321 (Fla. 1st DCA), rev. denied, 494 So.2d 1150 (Fla. 1986), this court remanded "to the trial court in order that the parties may build a record expounding the factual premises on which they base their opposing positions," Id. at 1326, explaining in detail the purpose of remand:

In urging this court to decide the constitutional issues raised without a factual record, appellees are of necessity requesting this court to assume, among other things, that appellants will be unable to present facts establishing the absence of a rational basis for the challenged legislation. The complaint alleges (in substance), among other things, that the act "grandfathers," in virtual perpetuity, large numbers of institutions, agencies, and agents in this state who were engaged in "insurance agency activities" on an arbitrary date (April 2, 1974), while at the same time prohibiting these activities to others, who, but for the act, would be entitled to continue or later commence the same activities. Thus, it is alleged, the act serves no useful purpose, discriminates without rational basis against plaintiffs, and unlawfully infringes upon the plaintiffs' rights to engage in a lawful business or occupation, and that the act creates without lawful or rational basis an economic advantage for the "grandfathered" group, all in violation of the due process and equal protection clauses of the Florida and federal constitutions. Appellants contend that even if the coercive sale of insurance by financial institutions was a problem in Florida prior to the enactment of section 626.988, it is no longer a problem [noting parenthetically that "The federal government has enacted legislation the effect of which permits federal savings and loan associations to sell insurance. See 12 U.S.C. § 1464(c)(4)(B), 12 C.F.R. §§ 545.74(c) and (c)(5)(ii)."]. More importantly, appellants also contend that if given the chance they intend to show that so many financial institutions and their agents are currently being permitted to sell insurance under the grandfather exceptions to the statute that the entire statute has been rendered ineffectual, and that the only remaining effect of the statute is to unfairly permit some agents and financial institutions to sell insurance, while others similarly situated are prohibited from doing so.
Clearly, the constitutionality of a statute predicated upon the existence of a particular state of facts may be challenged by showing that these facts never existed or have ceased to exist. [Citations omitted.] Because of the trial court's premature dismissal of their complaint, appellants were deprived of the opportunity to make this showing.
Id. at 1325-26.