667 So.2d 796 (1995)
STATE, DEPARTMENT OF INSURANCE; and Florida Association of Insurance Agents, et al., Appellants/Cross-Appellees,
v.
GREAT NORTHERN INSURED ANNUITY CORPORATION, et al., Appellees/Cross-Appellants.
Nos. 93-2698, 93-2740 and 93-2751.
District Court of Appeal of Florida, First District.
August 21, 1995.
*797 David J. Busch and Thomas D. Valentine, Tallahassee, for Department of Insurance.
Kenneth R. Hart & Steven P. Seymoe of Macfarlane Ausley Ferguson & McMullen, Tallahassee, for Fla. Association of Insurance Agents.
J. Robert McClure, Jr. and F. Townsend Hawkes, of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tallahassee, for Florida Association of Life Underwriters.
J. Thomas Cardwell and Virginia B. Townes, of Akerman, Senterfitt & Eidson, Orlando, for Florida Bankers Association and First Union Mortgage Corporation.
Robert J. Winicki and Jeffrey S. York, of Mahoney Adams & Criser, P.A., Jacksonville, for Barnett Banks Trust Company, N.A.
Alan Harrison Brents and David A. Yon, of Katz, Kutter, Haigler, Alderman, Marks & Bryant, P.A., Tallahassee, for Marketing One, Inc., Liberty Securities Corporation, and Compulife.
Bruce Culpepper and Robert S. Cohen, of Pennington, Haben, Wilkinson, Culpepper, Dunlap, Dunbar, Richmond & French, Tallahassee, for James Mitchell & Company.
Chrys D. Lemon and James T. McIntyre, The McNair Law Firm, Washington, DC, for Association of Banks in Insurance, Inc.
Robert L. Shevin and Jeff C. Schneider, of Strook & Strook & Lavan, Miami, for Great Northern Insured Annuity Corporation.
BARFIELD, Judge.
In this appeal and cross-appeal of an order of the Division of Administrative Hearings (DOAH) ruling on the validity of portions of the Department of Insurance (DOI) proposed rule chapter 4-223, Florida Administrative Code, five issues have been raised. We affirm on all issues.
Appellants DOI, the Florida Association of Insurance Agents (FAIA), and the Florida Association of Life Underwriters (FALU) contend that the DOAH hearing officer erred in finding that annuities are not insurance and in concluding that the annuity exemption of section 626.988(8), Florida Statutes (1991), had been triggered so as to exempt the sale of annuities from the scope of the proposed rules. They also assert that she erred in finding proposed rule 223.011(4)(c), prohibiting financial institutions and financial institution agencies from acting as third party administrators (TPAs) unless they were engaged in such activities as of April 2, 1974, to be an invalid regulation. The cross-appellants argue that the hearing officer erred in applying the "highly deferential reasonable basis standard" and in finding that the prohibitions or restrictions of relationships and activities contained in rules 4-223.003, 4-223.004, and 4-223.005 are rationally related to the language and/or intent of section 626.988. They contend that rules 4-223.006 through 4-223.009, which restrict advertising and endorsements of insurance products by financial *798 institutions, violate the United States Constitution's prohibition of restrictions on commercial speech, contrary to the hearing officer's determination. Finally, they argue that rule 4-223.009, which prohibits commission sharing or association, is not supported by any of the statutes the rule chapter was intended to implement.[1]
Section 626.988(2), Florida Statutes, prohibits licensed insurance agents or solicitors "associated with, under contract with, retained by, owned or controlled by, to any degree, directly or indirectly, or employed by, a financial institution" from engaging in "insurance agency activities" as "an employee, officer, director, agent or associate of a financial institution agency," with these terms defined in subsection 626.988(1). Subsections (5) and (7) provide for "grandfathering" of financial institution agencies and agents and solicitors who were engaged in insurance activities controlled by the statute as of April 2, 1974. Subsection (8) provides an exception for the sale of annuities by Florida chartered financial institutions through a licensed resident agent in compliance with the Florida Insurance Code, in the event that federal law permits federal banks to sell such annuities.
In the early 1980's, insurance companies began to market annuities in the lobbies or public access areas of financial institutions. In 1986, letters from DOI in response to inquiries outlined requirements that leased space and insurance sales literature be physically or visually separated from the functions of the financial institution and that there be no common employees. As a result of the incipient policy created by these letters, DOI proposed rules implementing section 626.988, which were withdrawn before adoption but were used thereafter as guidelines. In 1991, in anticipation of the rule-making mandate of section 120.535, DOI reviewed its guidelines and in January 1992, published proposed rules substantially similar to the guidelines, implementing section 626.988 and other insurance statutes aimed at preventing coercion, unfair trade practices, and undue concentration of financial resources. This proposed rule chapter 4-223 was withdrawn to correct perceived inadequacies in the economic impact statement (EIS), then was presented at a workshop, and was republished in June 1992. FALU and others challenged the June 1992 version, and a public hearing was held. In October 1992, DOI published a notice of change that materially altered rules 4-223.003, 4-223.004, and 4-223.005 to provide a definition for "associated" and "associate" and to prohibit insurance agents from occupying space virtually anywhere within the confines of a financial institution, but to allow restricted occupancy of space owned by the financial institution or in close proximity thereto.
The rule challenges by insurance companies, annuities marketing companies, financial institutions, and trade associations were consolidated; FAIA and the Department of Banking and Finance (DBF) intervened. On December 4, 1992, a partial summary final order was entered which determined that section 626.988(8) gives DOI the authority "to regulate the annuity products included in the definition of `life insurance' in section 624.602(1), F.S., and to regulate the agents who sell the products, but permits those agents a relationship with financial institutions otherwise prohibited by section 626.988(2), F.S." Additional amendments were published in December 1992, acknowledging or tracking the statutory exceptions. An extensive formal hearing was held before the DOAH hearing officer in December 1992. During the hearing, DOI proposed a final change clarifying that the rules do not apply to credit life and disability insurance and credit unemployment insurance, as a result of which some of the challengers voluntarily withdrew their petitions.
In her final order, the hearing officer found that the October 1992 proposed rule amendments arose from DOI's determination that current leasing arrangements "established a strong connection between the bank and the agent, in effect wrapping the insurance program in the bank's colors and presenting *799 it as another bank product" and from DOI's anticipation of difficulty in enforcing its rules as originally published. She found that prohibiting the sale of annuities on bank premises "would have a devastating effect on companies engaged in that activity" and that banks would also be affected, "as they recognize a substantial benefit of providing their customers the convenience of an in-house service." She found that while annuities are defined in section 364.602(1) as life insurance, they "are generally considered investments for future security rather than a cushion against loss," and that this fact was recognized by the Office of the Comptroller of the Currency (OCC) in a March 1990 letter stating that national banks are authorized to sell annuities, a conclusion upheld by the U.S. District Court's opinion in VALIC,[2] which she noted was at that time pending on appeal before the U.S. Court of Appeals for the Fifth Circuit.
The hearing officer applied the "highly deferential reasonable basis standard" of Florida League of Cities, Inc. v. Department of Environmental Regulation, 603 So.2d 1363 (Fla. 1st DCA 1992), and section 120.52(8) in determining whether the proposed rules constitute an invalid exercise of delegated legislative authority, also citing Department of Corrections v. Hargrove, 615 So.2d 199 (Fla. 1st DCA 1993). She noted that section 626.988 "was recently unsuccessfully challenged on vagueness, equal protection, due process, unlawful delegation of legislative authority, and federal preemption grounds" in Glendale Federal Savings & Loan Association v. Department of Insurance, 587 So.2d 534 (Fla. 1st DCA 1991), rev. den., 599 So.2d 656 (Fla.1992), which identified the legitimate state goals behind the statute as being "[c]oncerns regarding financial institutions' entry into insurance activities, including the prevention of coercion, unfair trade practices, and undue concentration of resources." She found that these are the goals that DOI seeks to achieve through its proposed rules and that other statutes, including parts of chapters 624, 626, and 627 relating to the same goals, "form a crucial basis for the rules as well." She concluded that rule 4-223.001 is rationally related to the enabling legislation, and that the clarifying amendment to rule 4-223.002 "effectively removes the sale of annuities from the scope of the rules and therefore from the rules' proscriptions." She concluded that the definition of "associated" and "associate" in rule 4-223.003(2) "is vague and incomprehensible" and that it "offends any rational interpretation of section 626.988, F.S. and is thoroughly useless as a standard for the agency's enforcement of that and other relevant statutes," but that "[n]othing presented here justifies a wholesale invalidation of the entire rule chapter when that definition falls" and that the remainder of rule 4-223.003 "simply reflects and refers to statutory definitions, and is appropriate."
As to the catalogue of prohibited or restricted associations in rules 4-223.004 and 4-223.005, the hearing officer found those proscriptions to be "specific, direct and unambiguous" and "a reasonable interpretation of the prohibitions of 626.988(2), F.S., which literally read, addresses insurance agency activities by an agent or solicitor acting as an employee, officer, director, agent, or associate of a financial institution agency." She concluded that although these rules affect commercial speech, which "enjoys a measure of constitutional protection," they "need only be tailored in a reasonable manner to serve a substantial state interest in order to survive First Amendment scrutiny," citing Edenfield v. Fane, 507 U.S. 761, 113 S.Ct. 1792, 123 L.Ed.2d 543 (1993). She found that DOI had demonstrated that these rules further the substantial state interests described and upheld in Glendale. She determined that the statute does not forbid "any and all associations *800 between an agent and financial institution, but rather only those associations which promote or further the insurance agency activity" and noted the federal construction of the term "associated with" in the RICO statute.[3] She found that, unlike the rules found unconstitutional in Edenfield, "[f]actual predicate for these rules is found in the enforcement experience of the agency and the Petitioners' candid testimony that the current common practices ... significantly benefit both the agent and host bank; the relationship is symbiotic." She concluded that the proposed DOI rules "do not, on their face, impair existing contracts" and that while such a challenge may be properly raised in the context of an enforcement action, "[a] hypothetical determination that future enforcement might be unconstitutional is beyond the scope of this proceeding," citing GTE Florida, Inc. v. Department of Transportation, 12 F.A.L.R. 1515 (DOAH 1990).
The hearing officer found that rules 4-223.006(2)(d) and 4-223.006(2)(h)5(i) improperly imposed restrictions on endorsements and mailing advertisements not imposed by section 626.988(5). She determined that rule 4-223.011(4)(a)3 embellishes the conditions for maintaining "grandfather status" and that the statute "does not give DOI the right to limit the scope of the license by restricting the type of business that can be performed by the agent," particularly in light of the October 1992 definition of "financial institution." She found that rule 4-223.011(4)(c), which prohibited financial institutions and financial institution agencies from acting as TPAs if they were not engaged in such activities before April 2, 1974, improperly expanded and modified sections 626.988 and 626.88 "to prohibit an activity nowhere proscribed by statute." She noted that in enacting the 1984 TPA statute (chapter 626, part VII), "the legislature apparently decided that a financial institution's operation as a Third-Party Administrator posed no threat of coercion, unfair competition or undue concentration of economic resources." She rejected the "single subject" challenge, finding that "[t]he subject matter of the rules at issue here logically relates to the purpose of establishing procedures and standards for insurance companies, agencies, agents and solicitors in their relationships and business arrangements with financial institutions, as stated in proposed rule 4-223.001." She concluded that DOI had prepared "an appropriate detailed EIS" for the June 1992 version of the rules and had properly considered the economic impact of the October 1992 amendments, and that it had not violated section 120.52(8)(a), nor "materially failed to follow the applicable rulemaking procedures set forth in Section 120.54."
The hearing officer's findings, that annuities are commonly viewed as investment products rather than insurance, and that national banks are authorized to sell annuities pursuant to federal law, are supported by competent substantial evidence. These findings support her conclusion that the annuity exemption of section 626.988(8), Florida Statutes, was triggered so as to exempt the sale of annuities from the scope of the proposed rules, see VALIC. She also properly determined that proposed rule 223.011(4)(c), prohibiting financial institutions and financial institution agencies from acting as TPAs unless they were engaged in such activities as of April 2, 1974, is an invalid regulation.
According to the appellees, a third-party administrator "is an organization that performs administrative services on behalf of insurance companies (rather than agents or agencies) under direct contracts with those companies. It is a kind of back-office operation which frees the insurance company resources and personnel from the performance of those administrative tasks." We find this explanation to be somewhat disingenuous. On the other hand, DOI argues that appellees are seeking a determination from this court that financial institutions may directly sell insurance to the public, albeit under the guise of TPAs, even though such sales are in clear violation of the language of section 626.988 and would allow them to solicit the *801 public without the inconvenience of subjecting their agents to the licensure requirements imposed by the Florida Legislature upon those who solicit insurance, in violation of the legislature's intent regarding the involvement of financial institutions in selling insurance and the licensing requirements of insurance agents. This argument is also somewhat misleading.
The 1984 Third Party Administrators' Act (sections 626.88-626.899) was intended to regulate the growing field of TPAs, defining the nature and scope of their authorization and providing for certification and continuing regulation by DOI. Section 626.88(1) defines "administrator" for purposes of the act as "any person who directly or indirectly solicits or effects coverage of, collects charges or premiums from, or adjusts or settles claims on residents of this state in connection with authorized commercial self-insurance funds or with insured or self-insured programs which provide life or health insurance coverage..." (emphasis supplied). The definition continues by listing exceptions, including licensed insurance agents whose activities are limited exclusively to sale of insurance and financial institutions that administer mortgage loan payments. Third party administrators must be authorized by certificate from DOI and are limited in their service to administering commercial self-insurance funds or life and health programs, or both, as specified in the certificate. § 626.8805(6), Fla.Stat. (1991). The terms "self-insurance funds" and "insured or self-insured programs" are not defined in Part VII of the Code, but derive their meaning elsewhere. See §§ 624.031, 627.551, and 627.651, Fla. Stat. (1991).
With respect to such funds or programs, commonly referred to as group insurance, the third party administrator is authorized to perform some functions akin to those of a licensed insurance agent, i.e., to solicit or effect coverage. To this extent, the administrator's functions are more expansive than suggested by the appellees. However, the solicitation and coverage effectuation, as well as general administrative functions, are limited by the provisions of sections 626.88-626.899. Among those limitations are the requirements that all terms of the agreement between the insurer and the administrator be in writing and be subject to inspection and approval by DOI, that all records be maintained for five years beyond the term of the agreement and be subject to inspection and audit by DOI, and that all contact between the administrator and the insured be in a manner and by means approved in writing by the insurer. DOI may suspend or revoke the certificate for a myriad of reasons, prominent among which is that the practices of the administrator are hazardous or injurious to insured persons or to the public.
Had the Florida Legislature chosen to classify third party administrators as agents, it could have done so. It did not. § 626.031, Fla.Stat. (1991). Neither did it prohibit financial institutions from functioning as third party administrators, either in Part VII or in Part X of the Code. The hearing officer was correct in her conclusion that rule 4-233.011(4)(c) improperly expanded and modified sections 626.988 and 626.88 "to prohibit an activity nowhere proscribed by statute."
The hearing officer did not err in applying the "highly deferential reasonable basis standard" in determining that proposed rules 4-223.003, 4-223.004, 4-223.005, and 4-223.009 do not constitute an invalid exercise of delegated legislative authority, see Florida League of Cities. We reject the appellees' argument that the term "associated" in section 626.988 should be strictly interpreted as limited to "owned or controlled" and affirm the hearing officer's findings that "the proscriptions of proposed rules 4-223.004 and.005 are specific, direct and unambiguous" and that they are valid exercises of delegated legislative authority, reasonably related to the purposes of section 626.988. She also properly determined that rules 4-223.006 through 4-223.009, which restrict advertising and endorsements of insurance products by financial institutions, do not violate the United States Constitution's prohibition of restrictions on commercial speech.
AFFIRMED.
KAHN, J., and SHIVERS, Senior Judge, concur.
NOTES
[1] This does not appear to be a separate issue, but instead an additional argument under the first issue on cross-appeal.
[2] Variable Annuity Life Insurance Company v. Clarke, 786 F.Supp. 639 (S.D.Tex.1991), ruled that national banks are authorized to sell annuities by the National Bank Act. That decision was reversed in Variable Annuity Life Insurance Company v. Clarke, 998 F.2d 1295 (5th Cir.1993), which concluded that annuities are insurance. That decision was in turn reversed in NationsBank of North Carolina, N.A. v. Variable Annuity Life Insurance Company, ___ U.S. ___, 115 S.Ct. 810, 130 L.Ed.2d 740 (1995), the Supreme Court finding that the OCC's determination that national banks may serve as agents in the sale of annuities is a reasonable construction of the National Bank Act and therefore warrants judicial deference.
[3] U.S. v. Yonan, 800 F.2d 164 (7th Cir.1986), cert. den., Yonan v. U.S., 479 U.S. 1055, 107 S.Ct. 930, 93 L.Ed.2d 981 (1987).